# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00399-CR

**Jose Adan Guardiola, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. C1CR06742579, HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Jose Adan Guardiola guilty of driving while intoxicated and assessed a punishment of 180 days in jail and a $2000 fine. *See* Tex. Penal Code Ann. § 49.04 (West 2003). On the jury's recommendation, the trial court suspended imposition of sentence and placed appellant on community supervision for two years. In this appeal, appellant contends that the evidence is legally and factually insufficient to sustain the guilty verdict. He also contends that the trial court allowed an unqualified witness to testify as an expert, erroneously admitted testimony regarding breath test results, retrograde extrapolation, and vertical gaze nystagmus, committed charge error, improperly limited the time allowed for jury argument, and erroneously denied appellant's motion for mistrial. We overrule these contentions and affirm the conviction.

Austin police officer Chris McFarland testified that he was dispatched to the scene of a one-car collision on Gail Road at around 4:00 a.m. on August 11, 2006. Upon arriving,

McFarland saw a Chevrolet Impala in the yard of a house where it had collided with a tree. McFarland stated that there was "a pretty good curve" in Gail Road at this location and, based on his training and experience, he believed that the driver of the Impala "was probably going too fast to go around the curve and partially struck the fence, slid into the yard and hit the tree."

Officer Josh Marquez was also dispatched to the scene, where he found appellant leaning against a friend's vehicle.[1] Appellant told Marquez that he was the driver of the wrecked Impala, which proved to be registered to appellant's father. Marquez testified that appellant told him that he had been downtown at a bar, where he had consumed three pints of beer between 10:00 p.m. and 12:30 a.m. Marquez added, "[H]e kind of pointed out that he was coming down Gail Road, and tried to brake and might have oversteered and lost control of his vehicle." Marquez testified that appellant's eyes were glassy and bloodshot, his voice was slurred, and he had the odor of alcoholic beverage about him. Marquez administered the standardized field sobriety tests and observed clues indicating intoxication.[2] Based on all that he had seen and heard, Marquez concluded that appellant was intoxicated.

At the jail following his arrest, appellant agreed to submit breath samples for testing. The intoxilyzer test, administered at 5:40 a.m. by Officer Robert Mitchell, indicated that appellant had an alcohol concentration of 0.176 (first sample) and 0.177 (second sample).

---

[1] Appellant's friend called the police. The record does not reflect how the friend came to be at the scene or how long he had been there.

[2] A video recording of appellant performing the field tests was admitted in evidence and shown to the jury.

The information accused appellant of driving while intoxicated using both statutory theories of intoxication: loss of normal use of his mental and physical faculties and having an alcohol concentration of 0.08 or more. *See id*. § 49.01(2). Both theories were submitted to the jury, which returned a general verdict of guilty.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 234 S.W.3d at 778.

Appellant argues that the evidence is legally insufficient to support his conviction because no witness testified that appellant "was the person who drove the vehicle into its final position there off the side of the road." Appellant further argues that no witness "could reliably indicate when Appellant last drove any vehicle or last drank any alcoholic beverage." Marquez testified, however, that appellant said he was driving the Impala down Gail Road when he lost control. The car belonged to appellant's father, and appellant had the keys to the car in his possession. From this evidence, the jury could rationally conclude beyond a reasonable doubt that appellant was driving the Impala when it collided with the tree on the night in question.

The evidence also supports the jury's determination that appellant was intoxicated when he drove. The exact time of the accident is not shown by the evidence, but it was reported to

3

the police at about 4:00 a.m. Marquez, who arrived at the scene of the accident within minutes of the report, testified that appellant displayed at that time the usual symptoms of intoxication. Marquez then administered the field sobriety tests and observed clues indicating that appellant was intoxicated. Appellant's intoxication was confirmed by the intoxilyzer results, which showed that appellant's alcohol concentration was more than two times the legal limit at 5:40 a.m. Viewing the evidence in the light most favorable to the verdict, the jury could rationally find beyond a reasonable doubt that appellant was intoxicated, under either definition of the term, when he drove the Impala down Gail Road, lost control, and crashed into the tree. Point of error one is overruled.

In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

Appellant asserts that the evidence of guilt "is too weak in itself and too controverted by other evidence to support the conviction." Appellant does not identify the controverting evidence to which he refers, and we note that the only witnesses called by the defense were McFarland and

4

Marquez, who were recalled for brief additional questioning. As for the weakness of the State's case, appellant argues that "the only evidence showing that [he] committed the alleged act is [his] own statements, presented via the equivocal and unimpressive recollection of Officer Marquez." Appellant also dismisses the "objectionable and spurious pseudo-scientific testimony from other witnesses," a reference to matters discussed later in this opinion. We must, however, consider all the evidence before the jury in assessing the sufficiency of the evidence. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994).

Appellant makes much of the fact that there is no evidence conclusively establishing when the accident happened. Thus, the evidence does not exclude the possibility that appellant became intoxicated after the accident and after he last operated the Impala. By the same token, however, there is no evidence excluding the possibility that the accident was reported immediately after it occurred and thus only minutes before Marquez first noticed appellant's symptoms of intoxication. A verdict is not manifestly unjust simply because the fact finder resolved conflicting views of the evidence in the State's favor. *Roise v. State*, 7 S.W.3d 225, 233 (Tex. App.—Austin 1999, pet. ref'd). The State's evidence was neither so weak in itself nor so greatly outweighed by contrary evidence as to render the jury's verdict clearly wrong. Point of error two is overruled.

In his third point of error, appellant contends that the trial court should not have certified Debbie Stephens as an expert regarding the Intoxilyzer 5000, the machine used to analyze appellant's breath samples. He asserts that Stephens was not shown to possess an adequate understanding of either the underlying theory of the machine or the technique by which the theory is applied, and therefore the State failed to show that her testimony would be relevant and reliable.

*See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-92 (1993).

The legislature has determined that the scientific theory underlying the Intoxilyzer 5000 is valid. *Reynolds v. State*, 204 S.W.3d 386, 390 (Tex. Crim. App. 2006) (citing Tex. Transp. Code Ann. § 724.064 (West 1999)). The legislature has also determined that the technique applying the scientific theory is valid when the breath test is administered by individuals certified by and using methods approved by the Texas Department of Public Safety. *Id*. As regards the admission of intoxilyzer test results, the only *Kelly/Daubert* issue for the trial court to determine is whether the technique was properly applied in accordance with the department's rules on the occasion in question. *Id*. at 391; *Henderson v. State*, 14 S.W.3d 409, 411 (Tex. App.—Austin 2000, no pet.).

Stephens testified that she is certified by the department of public safety as the technical supervisor for the breath alcohol testing program in Travis County. As such, she is responsible for the calibration, maintenance, and operation of the Intoxilyzer 5000 machine that was used to test appellant's breath. Stephens testified that in order to receive this certification, she was required to have a bachelor of science degree in chemistry or a natural science; her degree is in microbiology. She also received specialized training regarding the manufacture and repair of the machine, took a course on the effects of alcohol on the human body and the history of breath and blood alcohol testing, and had to demonstrate her ability to repair and calibrate the instrument. *See* 37 Tex. Admin. Code § 19.6(b) (2009) (requirements for technical supervisor certification). Stephens testified that she understands the scientific theory and principles underlying the operation of the intoxilyzer machine, which is one of the qualifications for certification. *See id*. § 19.6(b)(4). The court of criminal appeals has held that the fact of certification is sufficient to meet the

6

*Kelly/Daubert* criteria with respect to the competence of a breath test operator. *Reynolds*, 204 S.W.3d at 390. Similarly, we hold that the department's certification is sufficient to meet the *Kelly/Daubert* criteria with respect to the competence of the technical supervisor.

In this same point of error, appellant also contends that Mitchell, the officer who administered the intoxilyzer test, was not qualified as an expert under *Kelly* and *Daubert*. Mitchell testified that he is certified to operate the intoxilyzer by the department of public safety. This is sufficient to satisfy the *Kelly/Daubert* criteria. *Id*. Other than to challenge the qualifications of Stephens and Mitchell, appellant does not contend that the intoxilyzer test was performed improperly. Point of error three is overruled.

Appellant next contends that the results of his breath test were irrelevant and inadmissible because his intoxication at the time of the test "has nothing to do with" whether he was intoxicated while driving. *See* Tex. R. Evid. 402. For the same reason, he also urges that the test results were unfairly prejudicial, confused the issues, and misled the jury. *See* Tex. R. Evid. 403.

The results of a test for alcohol concentration taken within a reasonable period of time after the defendant was driving and showing that he was above the legal limit are probative evidence of intoxication at the time of driving. *Kirch v. State*, No. PD-0379-09, 2010 Tex. Crim. App. LEXIS 11, at *22-23 (Tex. Crim. App. Feb. 10, 2010); *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004). On this record, the trial court did not abuse its discretion by determining that appellant's test results made the fact of his intoxication at the time he drove more probable than it would have been without the evidence. *See* Tex. R. Evid. 401. Because the test results related directly to the offense for which appellant was on trial, the trial court could reasonably conclude that they were not unfairly prejudicial, confusing, or misleading.

7

*See Gigliobianco v. State*, 210 S.W.3d 637, 642 (Tex. Crim. App. 2006); *State v. Mechler*, 153 S.W.3d 435, 440-41 (Tex. Crim. App. 2005). Point of error four is overruled.

In point of error five, appellant contends that the trial court erred by permitting Stephens to give retrograde extrapolation testimony because she was not qualified to do so. Retrograde extrapolation is the estimation of a person's blood alcohol concentration at the time of driving based on a test result from some later time. *Mata v. State*, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001). Appellant does not refer us to the place in the reporter's record where the allegedly improper testimony was adduced. In our review of Stephens's testimony, we find that she testified to alcohol absorption and elimination rates and stated that if a person had stopped drinking and was in the elimination phase at the time of the test, his alcohol level would have been higher previously. For example, the prosecutor asked this question (without objection) based on appellant's statement that he had stopped drinking at 12:30 a.m.:

> Q. Okay. If someone—if they quit drinking at 12:30, and we know that they blew a .177 at 5:40, can you give a scientific opinion as to what their blood alcohol concentration would be?
>
> A. Their alcohol concentration would certainly have been decreasing. There's no more alcohol that's entering the system. We have a period of deprivation of over four hours. During that time period, their alcohol concentration would have peaked and started to decrease, where they would have been in elimination. So at a time prior to this breath test, their alcohol concentration would have been higher.

In response to cross-examination, Stephens repeatedly agreed that it is impossible to extrapolate a persons's alcohol concentration when driving without knowing when the person drove and when he last consumed alcohol. Because Stephens did not purport to extrapolate appellant's alcohol concentration when driving from his breath test results, we overrule point of error five.

Appellant contends in point of error six that Stephens was improperly allowed to testify with regard to vertical gaze nystagmus (VGN). Appellant contends that Stephens was not qualified to testify regarding this subject and that her testimony was irrelevant, unfairly prejudicial, and without an adequate factual basis. Appellant states that he made "multiple running objections" to the challenged testimony, but he does not cite them and we do not find them. To the contrary, the record reflects that appellant first adduced testimony regarding appellant's lack of VGN and what that indicated during his cross-examination of Marquez. Appellant voiced no objection when the prosecutor later asked Stephens to explain VGN and its significance.[3] Nothing is presented for review, and point of error six is overruled.

Appellant contends that the trial court erred by denying his request for an article 38.23 instruction. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). A defendant is entitled to such an instruction only if there is a disputed issue material to his claim that evidence was unlawfully obtained and therefore inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). Appellant argued below that he was entitled to the instruction because "the officer did not have sufficient evidence to form probable cause." Appellant is equally vague in his brief, asserting only that "fact questions existed concerning the propriety of the arrest and the sufficiency of the officer's basis for probable cause." Not only does appellant fail to identify any disputed issue of material fact relevant to the propriety of his arrest, we find nothing in the record to indicate that

---

[3] Stephens explained that VGN is an indicator of a person's alcohol tolerance. The presence of VGN indicates "a high dose" for that person, while the absence of VGN in a person who is otherwise shown to be intoxicated indicates that the amount of alcohol consumed was not unusually high for that person.

appellant objected to the admission of any evidence on this ground or otherwise raised the issue prior to asking for the instruction. Point of error nine is overruled.

In point of error eight, appellant contends that the trial court did not allow him sufficient time for jury argument at the guilt stage. He further argues that by its comments during argument, the trial court "essentially emasculated Defense Counsel in the eyes of the Jury and rendered him ineffective." He asserts that the "tone and comments made by the Trial Court clearly tainted the jury," citing *Blue v. State*, 41 S.W.3d 129, 132-33 (Tex. Crim. App. 2000) (holding that trial court's comments to jury panel before voir dire began tainted defendant's presumption of innocence and constituted fundamental constitutional error).

Trial courts have broad discretion in determining the length of arguments during a trial. *Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005). In determining whether this discretion was abused in a given case, we consider such factors as the seriousness of the offense and complexity of the issues, the amount and nature of the testimony, whether counsel used the time available efficiently, and the issues that were not discussed. *Id*. at 621-22.

This was a relatively straightforward first-offense driving-while-intoxicated trial. There were only four witnesses: the two investigating officers, the officer who administered the intoxilyzer test, and the technical supervisor. Appellant does not point to any complex issues that required an unusual amount of argument, and we find none. The record reflects that the prosecutor's opening argument lasted fifteen minutes. The trial court interrupted defense counsel's argument after approximately thirty minutes to remind him that "there are local rules on how long closing

arguments are" and instruct him to "wrap it up."[4]  The court's next warning to counsel came at the forty-five minute mark.  At this time, the court also reminded counsel, who had been replaying the video during his argument, that the jury would be allowed to watch the video during deliberations if they wished.  Ten minutes later, the court advised counsel that he had two more minutes.  The court finally instructed counsel to end his argument after it had run "over an hour."  Appellant does not identify any issues that he was unable to discuss during argument, nor does he point to the "dressing down" that "emasculated" counsel and tainted the jury.  Our reading of the record shows that the court was consistently polite to counsel, and the court made no statements of the sort that were at issue in *Blue*.  On this record, we find no abuse of discretion in the trial court's handling of defense counsel's jury argument.  Point of error eight is overruled.

Finally, appellant contends that the trial court erred by failing to adequately investigate possible jury misconduct and by overruling his motion for mistrial based on that alleged misconduct.  The issue arose on the morning of the second day of trial, when defense counsel told the court that on the previous day, "Officer Marquez and one of the jurors—when he finished testifying, he got down, one waved to the other, and the other one on the jury waved back at him."  Counsel referred to this incident as a "communication between the witness and . . . one of the jurors" and asked for a mistrial.  The court overruled the motion "at this stage" and said that it would investigate the matter.  The record reflects that the judge then went to the jury room and personally asked the panelists if any one of them had waved to Marquez or had seen another juror do so when

---

[4]  There is no claim that counsel was unfamiliar with the local rules, or that the local rules are improper in any way.

the officer finished testifying.[5]   Back in the courtroom, the judge reported that "one of them

said that they nodded to somebody" and another juror said "they waved to somebody when they got

on or off the witness stand."   The jury then entered the courtroom and the court repeated the

question-and-answer process:

> THE COURT: . . .  And just for the record's sake, I did go back and talk to you just briefly a minute ago; is that correct?
>
> JURY MEMBERS: (Nodding heads).
>
> THE COURT: And that—that's a yes by all members of the jury.  And the question that I went back to ask you was a question that was raised by one of the parties about whether or not someone had waved to Officer Marquez when he finished testifying yesterday; is that correct?
>
> JURY MEMBERS: (Nodding heads).
>
> THE COURT: And did—did—was there somebody who did do that?
>
> JURY MEMBER: I may or may not have involuntarily greeted.
>
> THE COURT: All right. . . .  Was there any kind of communication outside of that casual wave?
>
> JURY MEMBER: (Shaking head).
>
> THE COURT: Anything that—is there any information anyone else has gotten or anything else that the Court needs to be aware of or that both sides need to be aware of?
>
> Hearing none—all right.  We can proceed with the—with the trial.

The court declined defense counsel's request, made at the bench, to question the jurors himself.

Testimony then resumed without counsel renewing his motion for mistrial.

---

[5]  The court's questions were drafted by defense counsel.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We find no abuse of discretion in the trial court overruling appellant's mistrial motion without first investigating the incident prompting it. There is no evidence in the record to indicate that the jurors' responses to the trial court's questions were incorrect or incomplete. In fact, the court's investigation confirmed what defense counsel had first asserted, that one of the jurors had waved to Marquez as he left the stand. Appellant cites no authority to support his contention that defense counsel was entitled to personally question the jurors in open court, nor does appellant cite any authority suggesting that the juror's gesture constituted an improper conversation or communication between the juror and the witness. After the court concluded its questioning of the jurors in open court, appellant did not renew his mistrial motion. No abuse of discretion is shown. Point of error seven is overruled.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   March 23, 2010

Do Not Publish

13