NO. 07-10-00102-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 24, 2010

JASON DEAN BOLEN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 119TH DISTRICT COURT OF TOM GREEN COUNTY;

NO. B-08-0413-SA; HONORABLE BEN WOODWARD, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Jason Dean Bolen, appeals his conviction for driving while intoxicated,[1] a third-degree felony, for which the trial court imposed a sentence of six years' incarceration. We will affirm.

Factual and Procedural History

Appellant was driving his pickup truck when Tom Green County Deputy Gary Cole stopped him for disregarding a stop sign and failing to signal a turn. After stopping

_____

[1] See TEX. PENAL CODE ANN. § 49.04 (Vernon 2003), § 49.09(b) (Vernon Supp. 2009).

the truck and after a fellow deputy, Keith Jones, arrived to assist, the deputies asked appellant's three passengers to exit the truck, and Cole spoke with the cooperative appellant. Cole noted appellant's slurred speech, bloodshot eyes, and the smell of alcohol on his breath. When Cole asked him if he had anything to drink, appellant responded, "a 12-pack."[2] Cole asked appellant to perform the fingertip touch test, and appellant performed poorly on it. Based on his observations, Cole told Jones that appellant may be intoxicated, and Jones called for Sergeant Ron Sanders, who works in the DWI Selective Traffic Enforcement Program (STEP) and is specifically trained in and charged with investigating suspected DWI offenses.

Appellant also admitted to Sanders that he had consumed "a 12-pack." Sanders smelled alcohol on appellant's breath and observed that his eyes were bloodshot and his speech was slurred. Sanders, having known appellant for several years, testified to the distinction between appellant's usual speech and his slurred speech at the scene. Also, it appeared to Sanders that appellant had urinated on himself. Appellant accepted Sanders's invitation to perform field sobriety tests (FSTs). When asked about any physical handicaps, appellant only noted a sore calf muscle. Appellant's performance on each of the FSTs indicated to Sanders that appellant was impaired.

Appellant agreed to provide a breath sample and was arrested and taken to the Intoxilyzer room at the county jail. As he is required to do, Sanders, who is certified by the Texas Department of Public Safety (DPS) to operate the Intoxilyzer, observed

---

[2] Cole's later search of the vehicle yielded an open 30-pack of beer in the passenger's floorboard, an open bottle of whiskey, and a plastic cup the contents of which had been spilled into the driver's side floorboard and smelled of alcohol.

appellant for fifteen minutes prior to the sampling to make certain that no residual alcohol was present in appellant's mouth due to belching or other related bodily functions. Sanders saw no sign that appellant introduced residual alcohol from his stomach contents into his mouth but admitted that he did not check appellant's mouth during that fifteen-minute period. The results of the Intoxilyzer test of two breath samples indicated that appellant's breath alcohol concentration was 0.136 and 0.135, both readings being above the legal limit of 0.08. See TEX. PENAL CODE ANN. § 49.01(2)(B) (Vernon 2003).

Appellant was charged and convicted of the third-degree felony of driving while intoxicated, third or greater offense. See id. § 49.09(b). Appellant timely appealed the trial court's judgment of conviction and raises five issues on appeal. In his first issue, he challenges the legal and factual sufficiency of the evidence to support the conviction. In his second issue, he contends that the trial court abused its discretion by admitting the Intoxilyzer results in violation of appellant's Sixth Amendment right of confrontation. In his third issue, appellant contends the trial court erred by admitting expert testimony when the expert was not properly designated by the State and when the State failed to satisfy the reliability test for admission of scientific evidence. In his fourth issue, appellant complains of the trial court's exclusion of evidence concerning appellant's eyes during cross-examination of Sanders. Finally, appellant maintains that the "trial court erred by including a definition of reasonable doubt by omission."

Legal and Factual Sufficiency of the Evidence

Standards of Review

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

In assessing the factual sufficiency of the evidence, we must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the trier of fact's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). However, when a defendant's version of the facts conflicts with

4

other evidence, we must recognize that it is the jury's prerogative to judge the credibility of the evidence and to ascribe the weight to be given to the evidence. See Jones v. State, 944 S.W.2d 642, 647–48 (Tex.Crim.App. 1996).

Analysis

Appellant's challenge to the sufficiency of the evidence focuses on the intoxication element of the offense. The record shows that open and available containers of alcohol were present in the cab of appellant's truck. Appellant admitted to both Cole and Sanders that he had drunk "a 12-pack." Though he did not specify when he drank the twelve-pack or what type of beverage it was, the jury could have reasonably concluded that it was beer or another alcoholic beverage that came in such a package. Both Cole and Sanders noticed that appellant had bloodshot eyes and slurred speech and that he smelled of alcohol. We add that Sanders, having known appellant for years, was in a position to distinguish appellant's slurred speech at the time of the offense from his usual speech pattern. Sanders also noted that it appeared that appellant urinated on himself. Further, his performance on the FSTs indicated that he was impaired. And the Intoxilyzer results showed that he had a breath alcohol concentration above the legal limit of 0.08. Based on such evidence, the jury could have rationally concluded that appellant was intoxicated.

Appellant points to several factors that may have impacted Sanders's observations during the FSTs.[3]  For instance, the uneven, caliche road on which appellant performed the walk-and-turn and one-leg-stand tests could have affected his performance as could his unlaced work boots and sore calf muscle.  Appellant also points to Sanders's failure to videotape the breath test as evidence undermining the verdict.  Appellant adds that Sanders did not check appellant's mouth before administering the Intoxilyzer test which could have affected the readings.  While some of the cited evidence could be said to conflict with evidence of intoxication, it is within the jury's purview to resolve any conflict in the evidence and to ascribe the weight to be given to the evidence.  See Jones, 944 S.W.2d at 647–48.  We find no objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict.  See Watson, 204 S.W.3d at 417.  A verdict is not manifestly unjust simply because the trier of fact resolved conflicting evidence in favor of the State.  Roise v. State, 7 S.W.3d 225, 233 (Tex.App.—Austin 1999, pet. ref'd).

Having concluded that legally and factually sufficient evidence supports the jury's finding that appellant was intoxicated, we overrule appellant's first issue.

### Admission of Intoxilyzer Test Results; Confrontation Clause

Generally, in order to preserve error, there must be a timely and specific objection to the complained-of evidence.  TEX. R. APP. P. 33.1(a)(1)(A).  "Confrontation Clause claims are subject to this preservation requirement."  Davis v. State, No. AP-

---

[3] One of the factors he asserts is his unequally sized pupils.  Because appellant raises a second issue concerning this evidence, we will not separately address it here.  For reasons we will explain more thoroughly, such evidence was irrelevant.

75,796, 2010 Tex.Crim.App. LEXIS 723, at \*66 (Tex.Crim.App. June 16, 2010) (citing Anderson v. State, 301 S.W.3d 276, 280 (Tex.Crim.App. 2009)).

Because appellant did not raise a Confrontation Clause objection in the trial court, he has not preserved the issue for our review. We overrule his second issue.

Admission of Officer's Testimony Regarding Intoxilyzer

Appellant also contends the trial court abused its discretion by admitting Sanders's testimony relating to the administration of the Intoxilyzer and horizontal gaze nystagmus (HGN) tests because the State had failed to properly designate Sanders as an expert witness and because the State failed to satisfy the third prong of the reliability test for scientific evidence as enunciated in Kelly v. State, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992). As a result, appellant maintains, Sanders was improperly permitted to testify as to the procedure followed when administering the Intoxilyzer test and as to the results of the HGN test.

As a preliminary matter, we note that the trial court later instructed the jury to disregard any and all evidence related to the HGN test. We must presume the jury followed the trial court's instruction in the absence of any indication in the record to the contrary. Karnes v. State, 127 S.W.3d 184, 196 (Tex.App.—Fort Worth 2003, pet. ref'd). We presume that the jury disregarded the testimony concerning the HGN test and limit our discussion of this issue to the Intoxilyzer results.

7

Standard of Review

We review the trial court's admission of evidence for an abuse of discretion and will not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement. Bigon v. State, 252 S.W.3d 360, 367 (Tex.Crim.App. 2008).

Analysis

Appellant maintains that Sanders was not properly designated as an expert and, therefore, could not testify whether he followed the proper procedure in administering the breath test. Further, appellant contends, Michael Gassiot, a DPS technical supervisor, was not present during this administration of the Intoxilyzer test and, consequently, could not testify as to whether Sanders had followed proper procedure. Appellant maintains that these two limitations mean that the State could not prove that the Intoxilyzer test was properly performed and, therefore, the trial court abused its discretion by admitting the test results. Appellant's issue involves two concepts: the State's failure to disclose Sanders as an expert witness and the State's satisfaction of the reliability test for admission of scientific evidence. We address each concept in turn.

Disclosure

Appellant moved for discovery of expert witnesses under the following provision:

On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make

8

> disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date the trial begins.

TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (Vernon Supp. 2009). The trial court denied the motion,[4] concluding that the State had already provided a list of its witnesses to defense counsel.

Appellant seems to rely on the general rule that evidence willfully withheld from disclosure under a discovery order should be excluded from evidence. See Oprean v. State, 201 S.W.3d 724, 726 (Tex.Crim.App. 2006). However, the State's failure to designate Sanders as an expert witness did not violate a discovery order; the trial court denied appellant's motion for discovery of expert witnesses. Further, the State did disclose Sanders as a witness pursuant to the trial court's earlier discovery order.

The State provided notice of its intent to call Sanders as a witness, and was not ordered to disclose its expert witnesses. Even if we accept appellant's premise that Sanders has to be designated as an expert to testify to the matters at issue, appellant directs us to no authority that the State was required to disclose Sanders as an expert witness in the absence of the trial court's order to do so. We add that, because Sanders was the arresting officer and the operator of the Intoxilyzer, appellant, whose defense challenged the evidence of intoxication, should have anticipated that Sanders would testify to the results of the breath test. So, even assuming that Sanders had to

---

[4] Although both parties discuss the analysis to be undertaken when the State fails to disclose a witness pursuant to the trial court's discovery order under article 39.14, we see this case as presenting a different issue. The trial court had not ordered the State to disclose its expert witnesses. Appellant does not challenge the trial court's denial of its motion made pursuant to article 39.14.

be designated as an expert and that the State had a duty to disclose him as such in the absence of an order to do so, any error associated with this issue would be harmless.

Reliability of Intoxilyzer results

The proponent of scientific evidence must show the trial court, by clear and convincing evidence, that the evidence is reliable. To show reliability, three criteria must be met: (1) the underlying theory is valid; (2) the technique applying said theory is valid; and (3) the technique was properly applied on the occasion in question. Bigon, 252 S.W.3d at 367; Kelly, 824 S.W.2d at 573. Kelly applies to all scientific evidence offered under Rule 702 of the Texas Rules of Evidence, including Intoxilyzer test results. See Hartman v. State, 946 S.W.2d 60, 63 (Tex.Crim.App. 1997); Henderson v. State, 14 S.W.3d 409, 411 (Tex.App.—Austin 2000, no pet.).

In the context of breath test results, the Legislature has already determined that the underlying science is valid and that the technique applying it is valid so long as it is administered by individuals certified by and using testing techniques approved by the DPS. Reynolds v. State, 204 S.W.3d 386, 390 (Tex.Crim.App. 2006). Evidence of DPS certification is sufficient to meet the Kelly criteria with respect to the competence of the breath test operator. Reynolds, 204 S.W.3d at 390; see Guardiola v. State, No. 03-08-00399-CR, 2010 Tex.App. LEXIS 2071, at *10 (Tex.App.—Austin Mar. 23, 2010, no pet.) (mem. op., not designated for publication).

In a Kelly hearing, then, at which the results of a breath test are challenged, all the trial court need do to satisfy its "gate-keeping" function is to determine whether the technique was properly applied in accordance with the DPS rules on the particular

occasion in question. Reynolds, 204 S.W.3d at 391; Henderson, 14 S.W.3d at 411. A peace officer who is certified by the DPS to operate the Intoxilyzer "need not also be able to articulate the scientific principle behind the apparatus or the technology implementing it in order to satisfy the Kelly criteria." Reynolds, 204 S.W.3d at 391. "As long as the operator knows the protocol involved in administering the test and can testify that he followed it on the occasion in question, he need not also demonstrate any personal familiarity with the underlying science and technology." Id.

Here, appellant's issue centers on evidence concerning whether Sanders followed the proper procedure in administering the Intoxilyzer test. More specifically, he challenges Sanders's qualification to testify as to the mandatory fifteen-minute observation period. DPS regulations require that "[a]ll breath alcohol testing techniques" include, *inter alia*, the following:

> a period during which an operator is required to remain in the presence of the subject. An operator shall remain in the presence of the subject at least 15 minutes before the test and should exercise reasonable care to ensure that the subject does not place any substances in the mouth. Direct observation is not necessary to ensure the validity or accuracy of the test result.

37 TEX. ADMIN. CODE § 19.4(c)(1) (2006) (Tex. Dep't of Pub. Safety, Approval of Techniques, Methods and Programs).

The record shows that Sanders was certified by the DPS to operate the Intoxilyzer, and he testified that he complied with the required fifteen-minute observation period when administering the test. So, Sanders knew the protocol involved in administering the Intoxilyzer test and testified that he followed the protocol on the occasion in question; he need not have also demonstrated any personal familiarity with

11

the underlying science and technology. See Reynolds, 204 S.W.3d at 391. The State satisfied the Kelly reliability test per Reynolds, and the trial court did not abuse its discretion by admitting the Intoxilyzer test results. We overrule appellant's third issue.

Exclusion/Delayed Admission of Pupil Evidence

Appellant sought to show the jurors his eyes so that they could see that his pupils were not of equal sizes. This disparity, appellant maintained, would discredit Sanders's observations during the HGN test. Sanders testified that, in order for the HGN test to yield reliable indicators, the test subject must have equally-sized pupils and that appellant had equally-sized pupils at the time of the test. Appellant sought to introduce the eye exemplar during cross-examination of Sanders. The trial court excluded the exemplar at that time, concluding that the proper predicate for its admission had not been established. Later, the trial court admitted the exemplar after appellant's grandmother testified that appellant had suffered an eye injury in 1992 or 1993 and that, as a result of the injury, appellant's pupils were not of equal size. On appeal, appellant complains of the trial court's exclusion of the eye exemplar during cross-examination of Sanders. Appellant's contention fails to assert reversible error for two reasons.

First, the trial court admitted the eye exemplar after appellant's grandmother's testimony when, it found, the proper predicate for the exemplar's admission was established. Appellant points to nothing in the record that would suggest that the exemplar would have been more persuasive had the trial court admitted it sooner. Defense counsel set the groundwork for the relevance of the evidence, questioning Sanders extensively on the impact of equally-sized pupils on the HGN test, and the

12

grandmother's testimony provided the jury with a time and explanation of the trauma that caused appellant's condition. The jury was then permitted to examine appellant's eyes. The fact that the evidence, the exclusion of which appellant complains, came into evidence later, when the trial court found that the proper predicate for its admission had been established, renders any error associated with the trial court's earlier exclusion harmless. See Preston v. State, 481 S.W.2d 408, 409 (Tex.Crim.App. 1972) ("perceiv[ing] no harm to appellant in the instant case by the exclusion of the time card when it was subsequently admitted into evidence").

Secondly, as mentioned, the trial court later instructed the jury not to consider evidence relating to the HGN test, including "the results and the conclusions" drawn from it. The record reveals no indication that the jury disregarded the trial court's instruction. Presuming, then, as we must, that the jury disregarded any evidence relating to the HGN test, we see no need to present evidence to rebut evidence that the trial court instructed the jury to disregard. See Karnes, 127 S.W.3d at 196. That the eye exemplar came in later than appellant would have preferred, then, is of no moment; the jury did not consider the HGN evidence that the eye exemplar was intended to address. The trial court's instruction to the jury to disregard the HGN test evidence rendered any evidence meant to rebut the HGN evidence irrelevant. See TEX. R. EVID. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Evidence of appellant's unequal pupil sizes does not make any fact of consequence more or less

13

likely in the absence of the HGN test evidence. Thus, the trial court's exclusion of the eye exemplar, regardless of its later admission, was not erroneous.

Essentially, appellant complains of the timing of the trial court's admission of the eye exemplar. Considering that the trial court later admitted the very same evidence and that, later still, the trial court instructed the jury to disregard any HGN test evidence which the eye exemplar was intended to rebut, appellant's issue does not present reversible error. We overrule appellant's fourth issue.

Inclusion by Omission of Reasonable Doubt Definition

In his final point of error, appellant complains of the trial court's inclusion of the following language in its charge to the jury: "It is not required that the prosecution prove guilt beyond all possible doubt. It is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt."

Standard of Review

When presented with a jury charge complaint, we review the charge under Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g). Under Almanza, we must first determine whether error exists in the charge and, then, if we find error, whether such error caused sufficient harm to compel reversal. See Ngo v State, 175 S.W.3d 738, 743–44 (Tex.Crim.App. 2005).

14

Analysis

The Texas Court of Criminal Appeals has held that inclusion of this very language was not error. See Woods v. State, 152 S.W.3d 105, 114 (Tex.Crim.App. 2004) (resolving the split in authority among intermediate courts of appeals noted in Ochoa v. State, 119 S.W.3d 825, 829 (Tex.App.—San Antonio 2003, no pet.), whether inclusion of such language was error); see also Mays v. State, No. AP-75,924, 2010 Tex.Crim.App. LEXIS 480, *54–*55 (Tex.Crim.App. Apr. 28, 2010) (reaffirming the holding in Woods). Appellant has not directed us to contrary authority or any reason that the instant case presents an exception to the rule in Woods.

That said, we decline the invitation to depart from the holding in Woods. See Sierra v. State, 157 S.W.3d 52, 60 (Tex.App.—Fort Worth 2004), aff'd, 218 S.W.3d 85 (Tex.Crim.App. 2007) (noting that an intermediate appellate court "is bound by the precedent of the Texas Court of Criminal Appeals and has no authority to disregard or overrule" it); see also Swilley v. McCain, 374 S.W.2d 871, 875 (Tex. 1964) (announcing that, "[a]fter a principle, rule or proposition of law has been squarely decided by the Supreme Court, or the highest court of the State having jurisdiction of the particular case, the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties"). Inclusion of the challenged language was not error. Accordingly, we overrule appellant's fifth and final issue.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Publish.