**Opinion issued June 4, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00930-CR

_____

**MELVIN HARRIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 21-DCR-096886B**

---

## MEMORANDUM OPINION

A jury convicted Melvin Harris for the offense of continuous sexual abuse of a young child and sentenced him to life imprisonment. *See* TEX. PENAL CODE § 21.02(b). On appeal, he raises two issues: (1) the trial court erred in denying his

request for a mistrial; and (2) the trial court erred in including a definition of reasonable doubt in the jury charge. We affirm the trial court's judgment.

## BACKGROUND

Harris was charged with continuous sexual abuse of his daughter, Amy Hunter.[1] We limit our recitation of the background facts to those necessary to address the issues raised on appeal.

### *Request for Mistrial*

During trial, Amy testified that Harris had sexually abused her over the course of seven years, from the time she was about 6 years old until she was 14. She explained that she finally came forward with the allegations against her father when she was 18 and she saw him interacting with two young girls, his girlfriend's daughters. Amy said that she watched "the way he would kind of grab them, the position of his hands, how he would set them on his lap." That reminded her of how he abused her, in a way "that kind of looks innocent, but [she] knew the nature of it."

Following Amy's testimony, outside the presence of the jury, the trial court and counsel discussed the admissibility of certain anticipated testimony. The next

---

[1] Throughout the proceeding, a pseudonym was used to protect Amy's identity. *See* TEX. R. APP. P. 9.10(a)(3), (b); *see also* TEX. CONST. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

witness would be Amy's therapist. The therapist would testify that she made a CPS report based on what Amy told her in therapy. The following witness would be a police detective, and he would testify that he became involved with the case because of a referral from CPS. Defense counsel argued that the CPS investigation—which involved the two young girls, and not Amy—was not relevant.[2] The trial court agreed. The trial court explained: "The therapist can generally say, I got the report, she reported abuse, whatever the context of the sessions were, but without getting into . . . the details." The prosecutor then sought to clarify the trial court's ruling regarding the detective:

> [PROSECUTOR]: And, so, in terms of [the detective], then I will not question him about—I will phrase my questions in a way where he is notified about [the CPS report], not give specifics of the information received in the CPS notification, and then not go into the forensic interviews of the two girls, right?
>
> THE COURT: Correct.

After this discussion, the therapist testified, without objection, that she made a CPS report about the information Amy had shared with her in therapy.

After the therapist's testimony, in another bench conference, the following exchange occurred:

> [PROSECUTOR]: I was going to ask about (unintelligible).
>
> [DEFENSE COUNSEL]: I feel like it needs to be summed up. I feel like no mention of CPS.

---

[2] Ultimately, the CPS investigation did not result in additional charges against Harris.

3

THE COURT: You are saying no mention of CPS—

[PROSECUTOR]: And what we talked about this morning's testimony.

THE COURT: Let's take the jury out.

(JURY OUT)

THE COURT: Okay, be seated. And you can talk to your witness about not mentioning CPS.

[PROSECUTOR]: Thank you, Judge.

After this exchange, the next witness who testified was the police detective. He explained that he was a detective in the special crimes division, which investigated cases involving injury to the elderly, child abuse, and sexual abuse. When asked how cases were referred to the special crimes division, he answered: "There [are] three ways. [S]omeone can walk in and we can take the case over, or a deputy will take a report or a report is forwarded to us or we will get a notification from CPS." The prosecutor then asked: "How did your division get notified of this case?" He answered, "Via a CPS referral."

At this point, defense counsel requested a bench conference, and the trial court excused the jury. Defense counsel objected to the detective's mention of CPS and requested a mistrial. The trial court sustained the objection but denied the motion for a mistrial. Defense counsel rejected a curative instruction, explaining that if the trial court instructed the jury to disregard the reference, that would simply draw attention

4

to CPS again. The jury was brought in, and the prosecutor resumed questioning the detective, with no further mention of CPS.

*Jury Charge*

During the charge conference, defense counsel objected to certain proposed language in the charge discussing reasonable doubt, arguing the language reduced the State's burden of proof. The trial court initially sustained the objection, but reconsidered the issue later and overruled the objection. The trial court included that language in the charge, discussed further below.

## DISCUSSION

### A. MISTRIAL

Harris argues the trial court erred by not granting a mistrial after the detective violated the trial court's earlier ruling by mentioning CPS. Although defense counsel immediately objected and requested a mistrial, she did not ask for an instruction to disregard. The trial court denied the motion for a mistrial, and the trial continued. Now, on appeal, Harris argues this mention of CPS was harmful because it left the jury with the false impression that he was sexually abusing the two young girls, his girlfriend's daughters. He notes the trial court did not instruct the jury to disregard the reference to CPS. But he argues an instruction to disregard would not have cured this error anyway because it was so harmful.

5

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *McDonnell v. State*, 674 S.W.3d 694, 699 (Tex. App.—Houston [1st Dist.] 2023, no pet.). A mistrial is an extreme remedy for a "narrow class of highly prejudicial and incurable errors." *Ocon*, 284 S.W.3d at 884. A mistrial is warranted when an error is so prejudicial that "expenditure of further time and expense would be wasteful and futile." *Id.* We will uphold the trial court's decision to deny a mistrial "if it was within the zone of reasonable disagreement." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *McDonnell*, 674 S.W.3d at 699.

Typically, to determine whether a trial court abused its discretion by denying a mistrial, we consider three factors: (1) the severity of the misconduct and its prejudicial effect; (2) the effectiveness of the curative measures taken; and (3) the certainty of the conviction or punishment assessed absent the misconduct. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *McDonnell*, 674 S.W.3d at 699.[3]

---

[3]     *Hawkins v. State* and *Mosley v. State* addressed error caused by improper jury argument. *See Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998). This court in *Smith v. State*, although not binding precedent, concluded the same factors apply to other situations as well, like error caused by reference to an extraneous offense. *See* No. 01-22-00112-CR, 2023 WL 2247758, at *6 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, no pet.) (mem. op., not designated for publication).

But when a party moving for a mistrial does not first request a lesser remedy, we cannot reverse the trial court's judgment if the error could have been cured by a less drastic alternative. *Ocon*, 284 S.W.3d at 885; *Wright v. State*, 374 S.W.3d 564, 583 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Less drastic alternatives to the "extreme remedy" of a mistrial include instructing the jury to disregard and questioning the jury about any prejudice. *Ocon*, 284 S.W.3d at 884–85. Usually, a trial court's instruction to disregard an improper question and answer cures any error, even one revealing an extraneous offense. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam). We presume the jury followed a trial court's instruction to disregard in the absence of evidence it did not. *Nickerson v. State*, 312 S.W.3d 250, 266 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)

Assuming that it was error for the detective to mention CPS, an instruction to disregard the improper question and answer would have cured the error. *See Ovalle*, 13 S.W.3d at 783 (stating instruction to disregard ordinarily cures error caused by improper question and answer). Defense counsel did not request this less drastic alternative. She explained that an instruction to disregard would only draw attention to the error, and Harris repeats this argument on appeal, but this argument is unavailing in light of the two well-established principles that: (1) an instruction to disregard generally cures error from an improper question and answer; and (2) a jury is presumed to follow instructions to disregard in the absence of evidence it did not.

*See id.*; *Nickerson*, 312 S.W.3d at 266. We cannot reverse the trial court's judgment for failing to grant a mistrial if the error could have been cured by a less drastic alternative that was not requested. *See Ocon*, 284 S.W.3d at 885; *Wright*, 374 S.W.3d at 583.

Harris argues that an instruction to disregard would not have cured this error because the error was "clearly calculated to inflame the minds of the jury" and was "of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds," quoting *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998).

However, in *Rojas*, the Court of Criminal Appeals concluded the error in that case—similar to the error alleged here—was cured by the trial court's instruction to disregard, and therefore the trial court did not abuse its discretion in denying the motion for mistrial. *See id.* at 250–51. In that case, a witness explained that the defendant's girlfriend wanted the defendant to move out of their home because of "his past anger, his past violence." *Id.* at 244, 250. Defense counsel objected to the comment as prejudicial and inflammatory. *Id.* at 250. The trial court sustained the objection and instructed the jury to disregard that comment but denied the defendant's motion for mistrial. *Id.* On appeal, the Court explained that a prompt instruction to disregard usually cures a witness's reference to an extraneous offense, except when the reference is "clearly calculated to inflame the minds of the jury" or

is "of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Id.* The Court determined the reference to the defendant's past anger and past violence was not so damaging because it was not even a concrete reference to an extraneous offense "but merely vague speculation." *Id.* The Court concluded the instruction to disregard cured the error, and the trial court did not err in refusing to grant a mistrial. *Id.* at 250–51.

Similarly, in this case, the detective's reference to CPS was not a concrete reference to an extraneous offense, but a vague reference that could have signaled an investigation into a possible crime like the one for which Harris was being tried. Harris argues the jury must have inferred that because Amy was not a child when she reported Harris's abuse, CPS could not have investigated Harris on Amy's behalf, so CPS must have begun its investigation because Harris was accused of sexually abusing his girlfriend's two daughters. He argues this created a severely prejudicial effect: Harris was transformed, in the eyes of the jury, from a man charged with committing offenses against one child years ago into a serial child abuser. We disagree that this was the necessary, logical inference from a special crimes detective's reference to a CPS referral, particularly in light of the therapist's testimony, without objection, that she made a CPS report. Even if this comment were prejudicial, it was not so prejudicial that it could not have been cured by an instruction to disregard. *See id.* at 250. Like the supposedly prejudicial comment in

*Rojas*, the mention of CPS was not a concrete reference to an extraneous offense and did not necessarily implicate any offense at all. *See id.* We disagree with Harris that this reference to CPS was so inflammatory that an instruction to disregard could not have cured the error.

An instruction to disregard would have cured any error, *see Ovalle*, 13 S.W.3d at 783, and because Harris did not request this less drastic alternative before seeking a mistrial, we cannot reverse the trial court's judgment, *see Ocon*, 284 S.W.3d at 885; *Wright*, 374 S.W.3d at 583. We overrule Harris's first issue.

## B.     JURY CHARGE

In his next issue, Harris argues the trial court erred by including a definition of reasonable doubt in the jury charge that lessened the State's burden of proof. He acknowledges, however, that this court has previously considered the same language at issue and concluded there was no error in submitting that instruction to the jury. *See Carriere v. State*, 84 S.W.3d 753, 759 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Harris invites this court to reconsider its prior decision. This we decline to do, for the reasons explained below.

> The jury charge in this case included the following language:

> It is not required that the State prove the defendant's guilt beyond all possible doubt; it is required that the State's proof exclude all reasonable doubt concerning the guilt of the defendant.

The Court of Criminal Appeals in *Woods v. State* considered nearly identical language and concluded there was no error in including this instruction in a jury charge. *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004). As an intermediate court of appeals, we are bound to follow the Court of Criminal Appeals' precedent. *Ervin v. State*, 331 S.W.3d 49, 53 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

Even before the Court's opinion in *Woods*, this court had considered the inclusion of this language in a jury charge and independently concluded there was no error. *Carriere*, 84 S.W.3d at 759. We have continued to apply this holding. *See, e.g.*, *Merritt v. State*, No. 01-18-00607-CR, 2020 WL 1856210, at *5 (Tex. App.— Houston [1st Dist.] Apr. 14, 2020, no pet.) (mem. op., not designated for publication); *Burrows v. State*, 492 S.W.3d 398, 409 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).[4]

Harris claims that the intermediate courts are split as to whether including this language is error, citing *Phillips v. State*, 72 S.W.3d 719, 721 (Tex. App.—Waco 2002, no pet.). We found only one other case holding the inclusion of this language was error: *Rodriguez v. State*, 96 S.W.3d 398, 405 (Tex. App.—Austin 2002, pet. ref'd). However, both of the courts that issued these opinions have since

---

[4]    This court's opinion in *Burrows v. State* describes the history of this particular language and why this court and other courts have continued to uphold it. *See* 492 S.W.3d at 406–09. We need not repeat that history here.

acknowledged that *Woods* implicitly overruled these opinions. *Navarro v. State*, 623 S.W.3d 97, 106 (Tex. App.—Austin 2021, pet. ref'd) ("[We observe] that this Court's opinion in *Rodriguez* has been implicitly overruled by *Woods*."); *Steadman v. State*, 262 S.W.3d 401, 408 n.1 (Tex. App.—Waco 2008) ("Our decision in *Phillips* has been implicitly overruled by *Woods*."), *rev'd on other grounds*, 280 S.W.3d 242 (Tex. Crim. App. 2009). Any split in the intermediate courts on this issue no longer exists in light of *Woods*.[5] Therefore, unless or until the Court of Criminal Appeals reconsiders its holding in *Woods*, we may not reconsider our precedent agreeing with *Woods*.

Because there was no error in including the challenged instruction on reasonable doubt, *see Woods*, 152 S.W.3d at 115, we overrule Harris's second issue.

## CONCLUSION

We affirm the trial court's judgment.


Gordon Goodman
Justice

---

[5] The intermediate courts of appeals continue to follow the holding in *Woods*. *See, e.g.*, *Bullock v. State*, 673 S.W.3d 758, 768 (Tex. App.—Dallas 2023, no pet.); *Pena v. State*, 554 S.W.3d 242, 256 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *Bolen v. State*, 321 S.W.3d 819, 828 (Tex. App.—Amarillo 2010, pet. ref'd); *Randall v. State*, 232 S.W.3d 285, 294 (Tex. App.—Beaumont 2007, pet. ref'd); *Ruiz v. State*, 228 S.W.3d 691, 693 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.).

12

Panel consists of Justices Goodman, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).