**Billy Ray FRENCH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45222.**

Court of Criminal Appeals of Texas.

Sept. 25, 1972.

Jimmy Phillips, Jr., Angleton, for appellant.

Ogden Bass, Dist. Atty., and Billy M. Bandy, Asst. Dist. Atty., Angleton, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The conviction out of which this appeal arises is for driving a motor vehicle upon a public highway while under the influence of intoxicating liquor. The punishment was assessed by the court following the jury's verdict of guilty at three days in the county jail and a $100.00 fine.

Appellant contends the court erred in admitting into evidence the results of a Breathalyzer test and permitting the jury

1. The name of this witness is spelled "Herbert" in the transcription of the

to consider the same in its deliberations. He contends (a) the test was not shown to have been performed by an individual possessing a valid certificate issued by the Texas Department of Public Safety or according to methods approved by such agency, and (b) there is no evidence the chemicals used in such test were the correct chemicals or in the proper proportion to insure an accurate test, and (c) there is no evidence showing periodic inspection of the Breathalyzer, etc.

At appellant's trial on March 29, 1971, George Herbert,[1] Texas Highway Patrolman, testified that he arrested the appellant for driving while intoxicated on the night of August 27, 1969, in Brazoria County after he stopped appellant's motor vehicle for speeding and for having no taillights. Herbert related he carried the appellant to Angleton for a Breathalyzer test. He expressed the opinion the appellant was intoxicated, but, also, testified that if the Breathalyzer test had shown less than ".10%" he would not have filed charges.

Tommy D. Orand, Texas Highway Patrolman, testified that on the night of August 27, 1969, he was "certified" as a Breathalyzer operator and that he administered the test to the appellant. The record fails to reflect by whom he was certified. He answered affirmatively to conclusory questions, over objections, that proper chemicals had been used and that the machine was in working order. He related that the result of such test showed ".16".

On cross examination, he testified as follows:

"Q What was in the bottles that you used on the simulator test?

"A As a solution, I don't know the content. It's some type of an acid, but I don't remember what type of acid.

"Q What was the control number on the bottle?

court reporter's notes and "Hebert" in the briefs.

"A  I don't remember. I'd have to look at the check-slip.

"Q  But you don't have the check-slip?

"A  No, sir.

"Q  So, we don't know what that machine was run with, do we? You don't know where the bottles came from or the number that was on the bottles?

"A  It was stuff that was locked up in the cabinet to be used when running tests.

"Q  But you can't say what was used for sure of your own knowledge?

"A  I don't know what the number was on the vial.

"Q  Sir?

"A  I don't know what the number was on the vial.

"Q  You don't know who prepared these vials?

"A  No, sir, I do not know who prepared them.

"Q  You don't know who put what in these vials, do you, of your own knowledge?

"A  No, sir.

"Q  In fact these vials are sealed, aren't they?

"A  Yes, sir.

"Q  So, whoever sealed these vials was the last that could say whether or not the vials were contaminated?

"A  Yes, sir."

On re-direct examination, he related he was not a chemist, but had "a week's training in Austin" but was not taught to analyze or prepare chemicals.

At the conclusion of Orand's testimony, appellant's counsel moved

". . . to strike the testimony concerning the Breathalyzer test as this officer cannot testify what was used in the Breathalyzer test or what chemical solution was used in the Breathalyzer test. He cannot even testify as to where the vials came from or what the control number was on the vials, the control number being necessary to know what's in the vials, or who prepared the solution, and whether the proper solution was used or whether it was defective. . . ."

The motion was overruled.

Robert Bauer, chemist-toxicologist with the Department of Public Safety, testified .16, the results of the test given, would indicate the amount of alcohol present in a certain percentage of appellant's blood, and the accepted standard for determining intoxication of the National Safety Council, American Medical Association, and the President's Committee on National Safety was .10%.

On cross examination, he acknowledged that if proper chemicals were not used, there would be an inaccurate reading on the Breathalyzer. He admitted he could not say whether the chemicals used in the test administered to the appellant were properly mixed and without the control numbers there would not be any way he could tell. He related that the Breathalyzer was a delicate instrument and could be easily damaged.

After both sides rested and closed, the appellant timely objected to the failure of the court to include in his charge an instruction to the jury to disregard the results of the Breathalyzer test.

It should be observed that the Breathalyzer test in question was administered prior to the effective date of Article 802f, Vernon's Ann.P.C., (September 1, 1969), and the trial was conducted prior to the 1971 amendment to such statute making "0.10 per cent or more by weight of alcohol in the person's blood" prima facie proof of the fact that a person is under the influ-

ence of intoxicating liquor. (Acts 1971, 62nd Leg., ch. 709, p. 2340 [effective June 7, 1971]).

Thus, in the instant case, the State had no statutory standards providing the minimal percentage of blood alcohol necessary to establish a prima facie presumption of intoxication. See Miller v. State, 170 Tex. Cr.R. 406, 341 S.W.2d 440 (1960).

In Hill v. State, 158 Tex.Cr.R. 313, 256 S.W.2d 93 (1953), this court discussed the necessary predicate for the admissibility of an interpretation of the results of a breath test. There it was held that the State must show (1) the use of properly compounded chemicals; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine; (3) proof of the result of the test by a witness or witnesses qualified to translate and interpret such result so as to eliminate hearsay. See, also, Gilder v. State, 474 S.W.2d 723 (Tex.Cr.App.1972, concurring opinion).

In the instant case, Chemist Bauer was shown to be qualified to translate and interpret the results of a Breathalyzer test, thus satisfying the third prong of the *Hill* test.

Officer Orand, the testing officer, was not a chemist and had not been instructed in the analysis or preparation of chemicals. However, an officer may administer a breath test even though he is not otherwise qualified to interpret the results, Jackson v. State, 159 Tex.Cr.R. 524, 262 S.W.2d 499 (1953); Shawhan v. State, 393 S.W.2d 921 (Tex.Cr.App.1965), and the standards required to qualify one to administer the test are far less than those qualifying to interpret the results. Fluitt v. State, 169 Tex.Cr.R. 259, 333 S.W.2d 144 (1960). See, now, Article 802f, supra.

Orand testified that he was "certified" as a Breathalyzer operator, but he did not testify by whom. Since the test was given prior to the effective date of Article 802f, supra, we do not deem this a dis-

qualification. However, Orand testified that he did not have any instruction in chemistry; did not know what was contained in the vials he used to conduct the test; did not know the number on the vial nor who prepared the sealed vial. Bauer testified that, without the control number, he could not tell if the chemicals used were properly compounded and, if the proper chemicals were not used, an inaccurate reading would result. Thus, the first prong of the *Hill* test was not met.

Further, while Bauer testified he was a Supervisor, there was no showing he was assigned to the area in question or whether he or any one else periodically inspected or exercised supervision over the machine used to administer the test. The second prong of the *Hill* test was not met.

Therefore, we must conclude the court erred in allowing the jury to consider the results of the Breathalyzer test in their assessment of the evidence.

For the error noted, the judgment is reversed and the cause remanded.