Jerry Glenn REYNOLDS, II, Appellant,

v.

The STATE of Texas.

No. PD–1086–05.

Court of Criminal Appeals of Texas.

Oct. 18, 2006.

J. Craig Jett, Dallas, for Appellant.

Wade Jackson, Asst. Crim. D.A., Lubbock, for State.

### OPINION

PRICE, J., delivered the opinion of the unanimous Court.

The appellant pled guilty to and was convicted of the misdemeanor offense of driving while intoxicated. He was sentenced to 150 days in jail, probated for twelve months, and a fine of $500. On appeal to the Amarillo Court of Appeals, he challenged the trial court's pre-trial ruling that, had the case gone to trial, the State would have been permitted to intro-

duce evidence that the results of a breath test showed him to have a blood-alcohol level double the legal concentration sufficient to support a conviction. The appellant argued that the test results were inadmissible because the State was unable to show that the state trooper who conducted it was familiar with the science and technology that underlie the test. In a published opinion, the court of appeals rejected this argument.[1] We granted the appellant's petition for discretionary review to examine this holding, which he contends is in conflict with this Court's precedents.[2]

## PROCEDURAL POSTURE

A full recitation of the facts of the case is unnecessary to our disposition.[3] The appellant filed several pre-trial motions seeking to ascertain whether the State would be permitted to introduce evidence of the breath test results. At a hearing on those motions, it was established that the arresting officer who administered the test, Department of Public Safety (DPS) Trooper Parker, was a certified Intoxilyzer 5000 operator.[4] It was also established that he had little or no understanding of the scientific principles behind the machine. The State was able to produce another witness, however, who was a certified technical supervisor for the Intoxilyzer 5000 and was responsible for overseeing the particular Intoxilyzer 5000 that Trooper Parker operated. She was familiar with the science and technology upon which it is based and had first-hand knowledge that it was maintained and in good working order on the date Trooper Parker used it to test the appellant. The trial court ruled that the breath test results would be admissible at trial. With that understanding, the appellant later entered a guilty plea, subject to an appeal of the trial court's pre-trial ruling.

On direct appeal, the appellant argued that the trial court erred. He relied upon a line of cases from this Court, culminating in *Slagle v. State,* in which we purportedly held that the operator of an apparatus for testing alcohol concentration via a suspect's breath must be able to demonstrate a working knowledge of the scientific theory behind the particular apparatus before the results of the test will be admissible.[5] The court of appeals rejected this contention, without even citing *Slagle.* Instead, the court of appeals expressly relied upon the first in the same line of cases, *Hill v. State.*[6] In *Hill,* we held that, for the results of a breath test to be admissible, the proponent need only demonstrate that the breath test operator and his apparatus must be "under the supervision of one who has an understanding of the scientific theory of the machine."[7] The appellant now argues that, by the time *Slagle* was decided, the Court had implicitly overruled *Hill,* and the court of appeals therefore erred to rely on it. We disagree, and find that the

1. *Reynolds v. State,* 163 S.W.3d 808 (Tex. App.-Amarillo 2005).

2. *See* Tex.R.App.Proc. Rule 66.3(c).

3. *See* 163 S.W.3d at 810.

4. *See* Tex. Transp. Code § 724.016(a) ("A breath specimen taken at the request or order of a peace officer must be taken and analyzed under rules of the [DPS] by an individual possessing a certificate issued by the department certifying that the individual is qualified to perform the analysis.").

5. *Slagle v. State,* 570 S.W.2d 916, 918 n. 2 (Tex.Crim.App.1978).

6. 163 S.W.3d at 811.

7. 158 Tex.Crim. 313, 319, 256 S.W.2d 93, 96 (1953), *overruled on other grounds by Vasquez v. State,* 477 S.W.2d 629, 632 (Tex.Crim.App. 1972).

court of appeals' reliance on *Hill* was appropriate.

## ANALYSIS

### *Hill* versus *Slagle*

In *Hill*, we articulated "three essentials to the admissibility of evidence as to the results of [chemical breath] tests[.]" [8] The second "essential" was "[p]roof that the operator and the machine were under the periodic supervision of one who has an understanding of the scientific theory of the machine." [9] The appellant makes no argument that the testimony of the supervisor in this case would not have satisfied this essential.

In subsequent cases, the *Hill* articulation of the second essential was reworded, beginning with *French v. State*.[10] There, the Court paraphrased the second *Hill* essential: "the State must show ... (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine[.]" [11] This reworking of the language could reasonably be read to require

that the actual "operation" of the test be performed by "one who understands the scientific theory" involved. But that is by no means a necessary interpretation of the *French* paraphrase,[12] and in the context of the case it is clear that the Court did not intend to change the *Hill* standard. The Court meant only to reiterate the requirement that both the operator and machine be under the supervision of one who understands the scientific principles involved. There was no intent in *French* to hold that the operator must necessarily have such knowledge.[13] Unfortunately, the language of the Court's paraphrase injected an ambiguity, and it is this ambiguity that the appellant attempts to exploit in this case.

Our ambiguous paraphrase of *Hill's* second essential was carried over into a number of later opinions.[14] None of those cases involved an alleged failure of proof as to the scientific knowledge of the *operator* of the testing apparatus, however, and thus, none supports the proposition that this Court has ever unambiguously held that the *operator* of an apparatus for test-

8. 256 S.W.2d at 96.

9. *Ibid. See also, Fluitt v. State*, 169 Tex.Crim. 259, 261, 333 S.W.2d 144, 146 (1960) (breath test results admissible upon showing that State's witness "was qualified to test the chemicals, *provide the supervision over the operator*, and translate the reading of the machine into percentage of alcohol in the blood." (emphasis added)); *Bumpus v. State*, 509 S.W.2d 359, 361 (Tex.Crim.App.1974) (repeating *Hill* essentials verbatim, and finding them satisfied by proof that officer who administered breathalyzer test was certified, and properly supervised).

10. 484 S.W.2d 716 (Tex.Crim.App.1972).

11. *Id.* at 719.

12. The ambiguity of this sentence lies in determining whether the prepositional phrase "by one who understands the scientific theory of the machine" should be understood to

modify the noun "supervision," or the noun "operation." Both readings are awkward, but either is permissible. But to read the prepositional phrase to modify "supervision" accurately paraphrases what the Court held in *Hill*, while reading it to modify "operation" obviously changes *Hill's* second essential. Aside from the ambiguity itself, nothing in *French* indicates that we intended such a change.

13. Indeed, while the Court did find a violation of the second *Hill* essential in *French*, the violation it identified was a failure to prove that there was a supervisor who "periodically inspected or exercised supervision over the machine used to administer the test." *Ibid.* The Court found no failure of proof with respect to the operator of the machine.

14. *E.g., Reyna v. State*, 508 S.W.2d 632, 633 (Tex.Crim.App.1974); *Palafox v. State*, 509 S.W.2d 846, 849 (Tex.Crim.App.1974); *Cody v. State*, 548 S.W.2d 401, 404 (Tex.Crim.App. 1977).

ing breath for blood-alcohol concentration must understand the scientific principle and/or technology underlying the particular test. Only *Slagle* unambiguously phrases the second *Hill* essential in such a way as to require that the operator have the requisite scientific knowledge. There, in purporting once again to paraphrase both *Hill* and its ambiguous progeny, we said that "[a] predicate for the admissibility of the results of a breathalyzer examination requires a showing that ... (2) there has been periodic supervision over the machine *and the machine was operated by an individual who understands its scientific theory* [.]" [15] But *Slagle* did not involve any question about the admissibility of breath test evidence. Indeed, the inaccurate paraphrase of the *Hill* line of cases occurs in a footnote by which we meant only to illustrate an ancillary issue that Slagle had *not* raised on appeal. As such it constitutes dictum, obviously lacking in precedential value.[16]

■ In *Harrell v. State*, we held that the second *Hill* essential applies to determine the admissibility of intoxilyzer evidence.[17] In articulating that second essential, we once more carried forward the ambiguity that originated with *French*.[18] But we neither adopted the erroneous articulation of the *Slagle* footnote, nor intended to adopt any deviation from the predicate for admissibility we expressly found to have been "enumerated" in *Hill*.[19] We hold that the law is, always has been, and will remain the same, *viz:* it is *not* a part of the predicate for the admissibility of breath test results, including Intoxilyzer 5000 results, that the operator of the apparatus himself understand the scientific and technological principles behind the apparatus, so long as he is properly certified under the statute to operate it.[20]

### The *Kelly* Criteria

Furthermore, the Texas Rules of Evidence have not changed the law in this regard. In *Hartman v. State*,[21] a case specifically involving a challenge to the admissibility of intoxilyzer results, we held that the standard for admissibility of scien-

---

15.  570 S.W.2d at 918 n. 2 (emphasis added).

16.  In *Young v. State*, 826 S.W.2d 141, 144, n. 5 (Tex.Crim.App.1991), a majority of the Court observed (ironically, in a footnote) that it is "generally true" that footnotes constitute dictum. In any event, *Slagle's* inaccurate paraphrase of the second *Hill* essential would constitute obvious dictum even had it appeared in the text of our opinion, since it involved an articulation of a legal standard that was not necessary, or even relevant, to our disposition of any issue in the case.

17.  725 S.W.2d 208, 209 (Tex.Crim.App.1986).

18.  That is to say, we held that part of the predicate for admitting the results of an intoxilyzer test was proof of "the existence of periodic supervision over the machine and operation by one who understands scientific theory of the machine[.]" *Ibid.* We expressly identified this in *Harrell* as the *Hill* test for admissibility. Thus, as in *French*, it is apparent that the ambiguity was unintentional and not meant to signal any requirement, not found in *Hill* itself, that the *operator* of the intoxilyzer must have knowledge and understanding of the scientific principles by which the intoxilyzer detects blood-alcohol concentration.

19.  725 S.W.2d at 209. Indeed, the Court in *Harrell* found that the second and third *Hill* essentials were satisfied, even though there was no showing in that case that the officer who administered the intoxilyzer knew anything at all about the scientific principles involved. Instead, he testified, as did Trooper Parker in this case, only that he was a certified intoxilyzer operator, and then he simply described the procedure for operating it. *Id.* at 209. The Court specifically observed that it was the *supervisor's* testimony, not the *operator's*, that satisfied the last two *Hill* requirements. *Id.* at 210.

20.  *See* note 4, *ante.*

21.  946 S.W.2d 60, 63 (Tex.Crim.App.1997).

tific evidence derived from Rule 702 of the Rules of Criminal Evidence,[22] as explained in *Kelly v. State*,[23] applies equally to all scientific evidence, not just novel scientific evidence. *Kelly* held that scientific evidence must meet three criteria to be considered sufficiently reliable as to be of help to a jury: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question.[24] The appellant argues that, consistent with *Kelly*, the proponent of evidence of the results of a breath alcohol testing apparatus must show that the operator of the apparatus has a ready grasp of the sort of information he was required to know in order to become certified as an operator in the first place.[25]

We reject this contention. In the context of breath test results, the Legislature has already determined that the underlying science is valid, and that the technique applying it is valid as long as it is administered by individuals certified by, and using methods approved by the rules of, DPS.[26] The fact of certification is sufficient to meet the *Kelly* criteria with respect to the competence of the breath test operator. That the opponent of the evidence can demonstrate that the operator has not retained all of the knowledge that was required of him for certification is a circumstance that goes to the weight, not the admissibility, of the breath test results.

■ Harmonizing the Transportation Code and Rule 702, we hold that, when evidence of alcohol concentration as shown by the results of analysis of breath specimens taken at the request or order of a peace officer is offered in the trial of a DWI offense, (1) the underlying scientific theory has been determined by the legisla-

---

**22.** *See former* Tex.R. Cr. Evid. Rule 702; *now* Tex.R. Evid. 702.

**23.** 824 S.W.2d 568 (Tex.Crim.App.1992).

**24.** *Id.* at 573.

**25.** 37 Texas Administrative Code § 19.7(b) designates "the following hours and areas of instruction" in any program for operator certification for breath alcohol testing:
(1) three hours of instruction on the effects of alcohol on the human body;
(2) three hours of instruction on the operational principles of the breath alcohol testing instrument to be used. This instruction shall include:
(A) a functional description of the testing method; and
(B) a detailed operational description of the method with demonstrations;
(3) fives hours of instruction on Texas legal aspects of breath alcohol testing;
(4) three hours of instruction on supplemental information which is to include nomenclature appropriate to the field of breath alcohol testing;
(5) 10 hours of participation in a laboratory setting operating the breath testing equipment.

**26.** Tex. Transp. Code § 724.064 ("On the trial of a criminal proceeding arising out of an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft, or an offense under Section 106.041, Alcoholic Beverage Code, evidence of the alcohol concentration or presence of a controlled substance, drug, dangerous drug, or other substance as shown by an analysis of a specimen of the person's blood, breath, urine or any other bodily substance taken at the request or order of a peace officer is admissible."); *see also Stevenson v. State,* 895 S.W.2d 694, 696 (Tex.Crim.App.1995) (post-*Kelly* case holding that scientific reliability of intoxilyzer test is established so long as the proponent of evidence of the test results shows that the provisions of what is now Section 724.016 of the Transportation Code were satisfied); *Mireles v. Texas Dept. of Public Safety,* 9 S.W.3d 128, 131–32 (Tex.1999) (statute mandating admissibility of breath test evidence in license revocation proceedings satisfies *Hartman/Kelly* requirement for reliability, because statute constitutes legislative determination that the underlying science and technology are valid).

ture to be valid; (2) the technique applying the theory has been determined by the legislature to be valid when the specimen was taken and analyzed by individuals who are certified by, and were using methods approved by the rules of, DPS; and (3) the trial court must determine whether the technique was properly applied in accordance with the department's rules, on the occasion in question.

In a *Kelly* hearing, then, at which the results of a breath test are challenged, all the trial court need do to satisfy its "gatekeeping" function is to determine whether the technique was properly applied in accordance with the rules of DPS on the particular occasion in question. A peace officer such as Trooper Parker, who is certified by the DPS to operate the Intoxilyzer 5000, need not also be able to articulate the scientific principle behind the apparatus or the technology implementing it in order to satisfy the *Kelly* criteria. As long as the operator knows the protocol involved in administering the test and can testify that he followed it on the occasion in question, he need not also demonstrate any personal familiarity with the underlying science and technology. In short, nothing in Rule 702 or in *Kelly* calls for an amendment of the second *Hill* essential, as it is properly understood and articulated. It is not a prerequisite to the admission of the breath test results that the operator himself understand the science and technology involved.[27]

## CONCLUSION

The judgment of the court of appeals is affirmed.

---

27. The appellant does not contend that the State failed to show that the supervisor in this case had an inadequate understanding of the relevant science and technology, nor does he challenge any other aspect of the State's predicate under *Kelly*.