Opinion filed September 9,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                    Nos. 11-09-00107-CR & 11-09-00109-CR

                                                    __________

 

                                 ADRIAN
CONTRERAS, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 367th District Court

 

                                                           Denton
County, Texas

 

                              Trial Court Cause Nos. F-2008-1405-E
& F-2008-1991-E

 



 

                                                                  O
P I N I O N

 

            The
jury convicted Adrian Contreras of intoxication assault[1]
and failure to stop and render aid[2]
and assessed his punishment at nine years confinement and a $10,000 fine for
intoxication assault and five years confinement and a $5,000 fine for failure
to stop and render aid.  We affirm.

I. 
Background Facts

            Contreras
unsuccessfully tried to pass a motorcycle while driving a pickup.  Contreras
hit the motorcycle from the side and caused it to flip and throw its riders.  Contreras
did not stop to assist the injured motorcyclists.  An eyewitness stopped, helped
the motorcyclists, and called 911.  Another witness observed a pickup with a
blown-out tire speed into a Taco Bueno parking lot and drive to the back next
to a dumpster.  Concerned that something was wrong, the witness called 911.  The
witness saw a passenger, who appeared intoxicated, exit the pickup, look at
damage on the vehicle’s passenger side, and gather beer cans from the pickup.

            Lewisville
police officers responded to both 911 calls.  Officer Deborah Binion responded
to the call from Taco Bueno.  Officer Binion approached Contreras and noticed
that he had red, watery eyes and slurred speech; that there was a large amount
of beer visible in his pickup; and that the right front of his vehicle was
damaged.  Contreras was arrested for public intoxication.  He asked for a Spanish
speaking officer.  Lieutenant Casey Cameron Carter arrived and read Miranda[3]
warnings to Contreras in Spanish.  Contreras acknowledged that he understood
the warnings, and he admitted to drinking and driving.  Lieutenant Carter then had
Contreras perform field sobriety tests.  Contreras exhibited several signs of
intoxication.  Contreras provided a breath sample at the Lewisville Police
Department.  His blood alcohol concentration tested as 0.181.

II.   
Issues

Contreras
challenges his conviction in both cause numbers with two issues.  He contends
that the trial court erred by not suppressing statements made after being
arrested but before being informed of his rights as a Mexican citizen to
contact the Mexican consulate.  He also challenges the trial court’s decision
to admit the breathalyzer result.

III.
Motion to Suppress

Contreras
argues in his first issue that the trial court erred when it denied his motion
to suppress statements made to law enforcement officials because he was not
timely informed of his right as a Mexican citizen to contact the Mexican consulate. 
Contreras argues that the right to contact his consulate is tied to the Fifth
Amendment and that a defendant must knowingly and intelligently waive this
right prior to police questioning.

A trial court’s ruling on a motion
to suppress is reviewed for an abuse of discretion.  Guzman v. State,
955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997).  Under
this standard, we give almost total deference to the trial court’s determination
of historical facts supported by the record, especially when the findings are
based on an evaluation of credibility and demeanor.  Id. at 89.  We review de novo mixed questions of law and fact that do
not turn on an evaluation of credibility and demeanor.  State v. Iduarte,
268 S.W.3d 544, 549 (Tex. Crim. App. 2008).  We
uphold the trial court’s ruling if it is reasonably supported by the record and
is correct on any theory of law applicable to the case.  St. George
v. State, 237 S.W.3d 720, 725 (Tex. Crim. App. 2006).

The Vienna Convention on Consular Relations grants foreign
nationals who have been arrested, imprisoned, or taken into custody the right
to contact their consulate and requires the arresting government authorities to
inform the individual of this right “without delay.”  Rocha v. State, 16
S.W.3d 1, 13 (Tex. Crim. App. 2000).  Contreras
acknowledges that the United States Supreme Court has held that the Vienna
Convention does not control Texas or national law.  See Medellín v. Texas,
552 U.S. 491 (2008).  But Contreras distinguishes Medellín by describing
its holding as turning on the separation of powers doctrine and the court’s
determination that the treaty was not self-executing.  In contrast, his
argument is that notification of the right to contact a foreign consulate is a
procedural due process right granted him by the Fifth Amendment.

The Due Process Clause
provides that “[n]o person shall be . . . deprived of life, liberty, or
property, without due process of law.”  U.S.
Const. amend. V.  Contreras’s arrest implicates a liberty interest.  The
State was, therefore, required to follow a constitutionally sufficient
procedure in connection with his arrest.  Coleman v. Dretke, 395 F.3d
216, 221 (5th Cir. 2004).  Contreras makes no argument that the United States Constitution
has always required police officers to advise foreign nationals of their right
to contact a consulate official before beginning a custodial interrogation. 
Thus, if required now, it is because of subsequent developments.  Contreras
points first to the treaty itself.  Courts have, however, held that the Vienna
Convention does not create an individually enforceable right.  Medellín v.
Dretke, 371 F.3d 270, 280 (5th Cir. 2004); see also United States v.
Jimenez-Nava, 243 F.3d 192, 198 (5th Cir. 2001) (“The sum of Jimenez-Nava’s
arguments fails to lead to an ineluctable conclusion that Article 36 creates
judicially enforceable rights of consultation between a detained foreign
national and his consular office.  Thus, the presumption against such rights
ought to be conclusive.”).  

We recognize that Contreras’s
argument is that the Due Process Clause is the source of his procedural right.
But because the Vienna Convention was drafted to govern relations between
sovereign nations and foreign consular officials, Sierra v. State, 218
S.W.3d 85, 86-87 (Tex. Crim. App. 2007), we do not believe that its language
creates a substantive right sufficient to implicate the constitutionally required
procedures police officers must follow before interrogating a foreign
national.  Moreover, courts have not read the treaty to require notification
before instituting any police interrogation, but only within three
working days of the arrest.  See Sanchez-Llamas v. Oregon, 548 U.S. 331,
362 (2006) (Ginsburg, J., concurring in judgment) (citing Case Concerning Avena
and other Mexican Nationals (Mex. v. U.S.), 2004 I.C.J. 12, 52 ¶ 97
(Judgment of Mar. 31)).  Thus, even if we are in error and the Vienna
Convention does create a benefit enforceable under the Due Process Clause, we
do not believe that this required the police to inform Contreras of the right
to contact his consulate before beginning a custodial interrogation.

Contreras next points to the decision
of the International Court of Justice in Avena, and contends that it is
a violation of an individual’s human rights to be tried without knowledge of
the right to contact a consulate official.  The Supreme Court has held that ICJ
decisions are entitled to respectful consideration but that they are not
binding precedent “even as to the ICJ itself.”  Sanchez-Llamas,
548 U.S. at 355.  Furthermore, the United States withdrew from general ICJ
jurisdiction in 1985.  Medellín v. Texas, 552 U.S. at 500. We
decline, therefore, to find an ICJ decision as the basis for divining the procedural
rights guaranteed by the Fifth Amendment.  

Finally, Contreras argues
that President George W. Bush mandated compliance with the Avena
ruling.  See id. at 498 (President Bush determined that the United
States would “discharge its international obligations under Avena by
having State courts give effect to the decision.”).  The Supreme Court,
however, has concluded that the President lacked this authority.  Id. at
525-32.  Consequently, we find that the Due Process Clause did not require the
officers to advise Contreras that he had the right to contact a consulate
official prior to beginning a custodial interrogation.

Even if we are in error,
Contreras is not entitled to the suppression of any evidence.  The Supreme
Court has held that suppression under the federal exclusionary rule is not an
appropriate remedy for a violation of the Vienna Convention.  Sanchez-Llamas,
548 U.S. at 350.    In Rocha, the Texas Court of Criminal Appeals held
that the exclusionary rule under Tex.
Code Crim. Proc. Ann. art. 38.23 (Vernon 2005) does not provide a remedy
for violations of treaties, including the Vienna
Convention.  Rocha, 16 S.W.3d at 18-19.  The trial court, therefore, did
not err in admitting Contreras’s statements.  Issue One is overruled.  

IV.
Intoxilyzer Test

Contreras
contends in his second issue that the trial court erred by admitting the
results of his intoxilyzer test.  We review the trial court’s ruling on the admissibility
of evidence under an abuse of discretion standard.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  Because the
underlying science of intoxilyzer tests has been determined by the legislature
to be valid, the trial court’s sole duty when the results of a test are
challenged is to serve as a gatekeeper and determine whether the test was
properly applied in accordance with DPS rules.  Tex. Transp. Code Ann.
§ 724.016 (Vernon 1999); Tex. R.
Evid. 702; Reynolds v. State,
204 S.W.3d 386, 390-91 (Tex. Crim. App. 2006).  As
long as the operator is certified by DPS, knows the protocol involved in
administering the test, and testifies that it was followed on the occasion in
question, it is not necessary to demonstrate any personal familiarity with the
underlying science and technology.  Reynolds, 204 S.W.3d at 390-91.

Contreras
complains that the State did not adequately show that it followed proper
procedures when administering the test.  The record reflects that Community
Service Officer John Swinbanks is a certified intoxilyzer operator.  He
detailed the methodology he follows when administering a test.  Technical Supervisor
Lisa Fondren testified that Officer Swinbanks’s machine was inspected a month prior
to Contreras’s test and again a week after and was oper-ating correctly both
times.  The State adequately established that the test was properly
administered.   

Contreras
complains next that he was not afforded an opportunity to independently test
the specimen taken.  A person arrested for driving while intoxicated is
entitled to a reasonable opportunity to contact a physician or nurse to take an
additional specimen of blood after submitting to a breath test.  Tex. Transp.
Code Ann. § 724.019(a)-(b) (Vernon 1999).  When Contreras provided
a breath sample, Officer Robert Limon informed him that he was over the legal
limit and that he was entitled to contact a doctor, technician, pharmacist, or
nurse to come within two hours and draw blood.  Contreras did not attempt to
contact anyone; thus, he was not denied the chance to independently test his
blood alcohol concentration.

Contreras
argues lastly that the intoxilyzer test result was inadmissible because he was
not provided with the software code for the intoxilyzer instrument.  The record
does not indicate that Contreras ever requested the software code. 
Furthermore, Contreras cannot show with a reasonable probability that, had he
been given access to the computer and computer program, the outcome of the
trial would have been different. 

The
trial court did not err in admitting evidence of the intoxilyzer test, and we
overrule Contreras’s second issue.    




 

V.  Conclusion

The judgments of the trial court are affirmed.

 

 

RICK STRANGE

JUSTICE

 

September 9,
2010

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]11-09-00107-CR.

 





                [2]11-09-00109-CR.





                [3]Miranda v. Arizona, 384 U.S. 436 (1966).