**Opinion filed September 9, 2010**



# In The

# Eleventh Court of Appeals

_____

## Nos. 11-09-00107-CR & 11-09-00109-CR

_____

## ADRIAN CONTRERAS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 367th District Court**

**Denton County, Texas**

**Trial Court Cause Nos. F-2008-1405-E & F-2008-1991-E**

## O P I N I O N

The jury convicted Adrian Contreras of intoxication assault[1] and failure to stop and render aid[2] and assessed his punishment at nine years confinement and a $10,000 fine for intoxication assault and five years confinement and a $5,000 fine for failure to stop and render aid. We affirm.

### I. *Background Facts*

Contreras unsuccessfully tried to pass a motorcycle while driving a pickup. Contreras hit the motorcycle from the side and caused it to flip and throw its riders. Contreras did not stop to

---

[1] 11-09-00107-CR.

[2] 11-09-00109-CR.

assist the injured motorcyclists. An eyewitness stopped, helped the motorcyclists, and called 911. Another witness observed a pickup with a blown-out tire speed into a Taco Bueno parking lot and drive to the back next to a dumpster. Concerned that something was wrong, the witness called 911. The witness saw a passenger, who appeared intoxicated, exit the pickup, look at damage on the vehicle's passenger side, and gather beer cans from the pickup.

Lewisville police officers responded to both 911 calls. Officer Deborah Binion responded to the call from Taco Bueno. Officer Binion approached Contreras and noticed that he had red, watery eyes and slurred speech; that there was a large amount of beer visible in his pickup; and that the right front of his vehicle was damaged. Contreras was arrested for public intoxication. He asked for a Spanish speaking officer. Lieutenant Casey Cameron Carter arrived and read *Miranda*[3] warnings to Contreras in Spanish. Contreras acknowledged that he understood the warnings, and he admitted to drinking and driving. Lieutenant Carter then had Contreras perform field sobriety tests. Contreras exhibited several signs of intoxication. Contreras provided a breath sample at the Lewisville Police Department. His blood alcohol concentration tested as 0.181.

## II. *Issues*

Contreras challenges his conviction in both cause numbers with two issues. He contends that the trial court erred by not suppressing statements made after being arrested but before being informed of his rights as a Mexican citizen to contact the Mexican consulate. He also challenges the trial court's decision to admit the breathalyzer result.

## III. *Motion to Suppress*

Contreras argues in his first issue that the trial court erred when it denied his motion to suppress statements made to law enforcement officials because he was not timely informed of his right as a Mexican citizen to contact the Mexican consulate. Contreras argues that the right to contact his consulate is tied to the Fifth Amendment and that a defendant must knowingly and intelligently waive this right prior to police questioning.

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Under this standard, we give almost total deference to the trial court's determination of historical facts supported by the record, especially when the findings are based on an evaluation of credibility and demeanor. *Id.*

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

at 89.  We review de novo mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor.  *State v. Iduarte*, 268 S.W.3d 544, 549 (Tex. Crim. App. 2008).  We uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case.  *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2006).

The Vienna Convention on Consular Relations grants foreign nationals who have been arrested, imprisoned, or taken into custody the right to contact their consulate and requires the arresting government authorities to inform the individual of this right "without delay."  *Rocha v. State*, 16 S.W.3d 1, 13 (Tex. Crim. App. 2000).  Contreras acknowledges that the United States Supreme Court has held that the Vienna Convention does not control Texas or national law.  *See Medellín v. Texas*, 552 U.S. 491 (2008).  But Contreras distinguishes *Medellín* by describing its holding as turning on the separation of powers doctrine and the court's determination that the treaty was not self-executing.  In contrast, his argument is that notification of the right to contact a foreign consulate is a procedural due process right granted him by the Fifth Amendment.

The Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  Contreras's arrest implicates a liberty interest.   The State was, therefore, required to follow a constitutionally sufficient procedure in connection with his arrest.  *Coleman v. Dretke*, 395 F.3d 216, 221 (5th Cir. 2004).  Contreras makes no argument that the United States Constitution has always required police officers to advise foreign nationals of their right to contact a consulate official before beginning a custodial interrogation.   Thus, if required now, it is because of subsequent developments.  Contreras points first to the treaty itself.  Courts have, however, held that the Vienna Convention does not create an individually enforceable right.  *Medellín v. Dretke*, 371 F.3d 270, 280 (5th Cir. 2004); *see also United States v. Jimenez-Nava*, 243 F.3d 192, 198 (5th Cir. 2001) ("The sum of Jimenez-Nava's arguments fails to lead to an ineluctable conclusion that Article 36 creates judicially enforceable rights of consultation between a detained foreign national and his consular office.  Thus, the presumption against such rights ought to be conclusive.").

We recognize that Contreras's argument is that the Due Process Clause is the source of his *procedural* right. But because the Vienna Convention was drafted to govern relations between sovereign nations and foreign consular officials, *Sierra v. State*, 218 S.W.3d 85, 86-87 (Tex. Crim. App. 2007), we do not believe that its language creates a substantive right sufficient to implicate the constitutionally required procedures police officers must follow before

3

interrogating a foreign national. Moreover, courts have not read the treaty to require notification before instituting *any* police interrogation, but only within three working days of the arrest. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 362 (2006) (Ginsburg, J., concurring in judgment) (citing *Case Concerning Avena and other Mexican Nationals (Mex. v. U.S.)*, 2004 I.C.J. 12, 52 ¶ 97 (Judgment of Mar. 31)). Thus, even if we are in error and the Vienna Convention does create a benefit enforceable under the Due Process Clause, we do not believe that this required the police to inform Contreras of the right to contact his consulate before beginning a custodial interrogation.

Contreras next points to the decision of the International Court of Justice in *Avena*, and contends that it is a violation of an individual's human rights to be tried without knowledge of the right to contact a consulate official. The Supreme Court has held that ICJ decisions are entitled to respectful consideration but that they are not binding precedent "*even as to the ICJ itself.*" *Sanchez-Llamas*, 548 U.S. at 355. Furthermore, the United States withdrew from general ICJ jurisdiction in 1985. *Medellín v. Texas*, 552 U.S. at 500. We decline, therefore, to find an ICJ decision as the basis for divining the procedural rights guaranteed by the Fifth Amendment.

Finally, Contreras argues that President George W. Bush mandated compliance with the *Avena* ruling. *See id.* at 498 (President Bush determined that the United States would "discharge its international obligations under *Avena* by having State courts give effect to the decision."). The Supreme Court, however, has concluded that the President lacked this authority. *Id.* at 525-32. Consequently, we find that the Due Process Clause did not require the officers to advise Contreras that he had the right to contact a consulate official prior to beginning a custodial interrogation.

Even if we are in error, Contreras is not entitled to the suppression of any evidence. The Supreme Court has held that suppression under the federal exclusionary rule is not an appropriate remedy for a violation of the Vienna Convention. *Sanchez-Llamas*, 548 U.S. at 350. In *Rocha*, the Texas Court of Criminal Appeals held that the exclusionary rule under TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005) does not provide a remedy for violations of treaties, including the Vienna Convention. *Rocha*, 16 S.W.3d at 18-19. The trial court, therefore, did not err in admitting Contreras's statements. Issue One is overruled.

## IV. *Intoxilyzer Test*

Contreras contends in his second issue that the trial court erred by admitting the results of his intoxilyzer test. We review the trial court's ruling on the admissibility of evidence under an

abuse of discretion standard. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Because the underlying science of intoxilyzer tests has been determined by the legislature to be valid, the trial court's sole duty when the results of a test are challenged is to serve as a gatekeeper and determine whether the test was properly applied in accordance with DPS rules. TEX. TRANSP. CODE ANN. § 724.016 (Vernon 1999); TEX. R. EVID. 702; *Reynolds v. State*, 204 S.W.3d 386, 390-91 (Tex. Crim. App. 2006). As long as the operator is certified by DPS, knows the protocol involved in administering the test, and testifies that it was followed on the occasion in question, it is not necessary to demonstrate any personal familiarity with the underlying science and technology. *Reynolds*, 204 S.W.3d at 390-91.

Contreras complains that the State did not adequately show that it followed proper procedures when administering the test. The record reflects that Community Service Officer John Swinbanks is a certified intoxilyzer operator. He detailed the methodology he follows when administering a test. Technical Supervisor Lisa Fondren testified that Officer Swinbanks's machine was inspected a month prior to Contreras's test and again a week after and was operating correctly both times. The State adequately established that the test was properly administered.

Contreras complains next that he was not afforded an opportunity to independently test the specimen taken. A person arrested for driving while intoxicated is entitled to a reasonable opportunity to contact a physician or nurse to take an additional specimen of blood after submitting to a breath test. TEX. TRANSP. CODE ANN. § 724.019(a)-(b) (Vernon 1999). When Contreras provided a breath sample, Officer Robert Limon informed him that he was over the legal limit and that he was entitled to contact a doctor, technician, pharmacist, or nurse to come within two hours and draw blood. Contreras did not attempt to contact anyone; thus, he was not denied the chance to independently test his blood alcohol concentration.

Contreras argues lastly that the intoxilyzer test result was inadmissible because he was not provided with the software code for the intoxilyzer instrument. The record does not indicate that Contreras ever requested the software code. Furthermore, Contreras cannot show with a reasonable probability that, had he been given access to the computer and computer program, the outcome of the trial would have been different.

The trial court did not err in admitting evidence of the intoxilyzer test, and we overrule Contreras's second issue.

5

## V. *Conclusion*

The judgments of the trial court are affirmed.

RICK STRANGE

JUSTICE

September 9, 2010

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.