**Affirmed and Memorandum Opinion filed April 3, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00047-CR

### SOLOMON GETACHEW WORKU, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 2**
**Harris County, Texas**
**Trial Court Cause No. 1799333**

## M E M O R A N D U M   O P I N I O N

Appellant Solomon Getachew Worku was convicted of misdemeanor driving while intoxicated. In three issues on appeal, appellant challenges the admissibility of breath test evidence because (1) the State failed to prove that a proper 15-minute observation period was satisfied before the breath test was administered; (2) the trial court erred in denying appellant's request for a gatekeeper hearing to determine the admissibility of breath test evidence; and (3)

the State failed to prove that appellant's consent was voluntary. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning on December 18, 2011, Officer Colleen Nelson of the Houston Police Department was responding to a disturbance call on Sage Road. As she was driving in the right lane looking for the address of the disturbance, appellant drove out of an apartment complex driveway and broad-sided Nelson's patrol car. Nelson got out of her car and walked to appellant's car to ask if he was injured. Nelson opened appellant's car door because his window was not open. When she opened the door and asked whether appellant was injured, she immediately smelled the odor of an alcoholic beverage. When appellant spoke, the odor was more intense. Nelson also observed that appellant's eyes were bloodshot and he did not maintain eye contact as one would expect in a regular conversation. Appellant declined Nelson's offer to call an ambulance. Nelson helped appellant out of his car, and noticed that he appeared intoxicated. Because Nelson's vehicle was involved in the accident, she called another officer to investigate.

Officer Jesus Morales was dispatched to investigate the accident. When he arrived he interviewed Nelson and appellant to determine how the accident had occurred. When Morales began to interview appellant, he asked whether appellant understood English, and appellant said that he did. During his interview with appellant Morales observed that appellant "smelled a little of alcohol," had "red, glassy eyes," and appeared intoxicated. Morales asked appellant if he had been drinking and appellant said he had. At that time, Morales stopped the interview and requested a DWI unit to confirm his suspicions.

Officer Jana Enloe was dispatched from the DWI task force. When Enloe arrived she noticed that appellant smelled of alcohol, had red, glassy eyes, and appeared unsteady on his feet. Appellant told Enloe he had two glasses of wine

2

approximately 30 minutes earlier. She administered a series of field sobriety tests, including horizontal gaze nystagmus (HGN), one-leg stand, and the walk-and-turn test. The HGN test measures involuntary movement in the eyes by requiring the individual to stand still and follow a stimulus with the individual's eyes without moving the head. Enloe testified that appellant was unable to perform the HGN test because he was intoxicated and unable to follow instructions. When performing the one-leg-stand test, appellant exhibited three out of four clues to intoxication. On the walk-and-turn test, appellant exhibited seven out of eight clues to intoxication.[1]

After administering the field sobriety tests, Enloe decided to arrest appellant for driving while intoxicated. Enloe placed appellant in handcuffs and retrieved a copy of the DIC-24 consent form from her car. She held the form so that appellant could see it, and read the DIC-24 form to appellant verbatim. The DIC-24 explains an individual's rights with regard to whether to consent to give a sample of his breath or blood. After reading the form, Enloe asked appellant if he was willing to give a breath sample. Appellant told her he did not understand.

Enloe then explained that appellant was under arrest for "suspicion of driving while intoxicated," and that she was asking whether he was willing to consent to giving a sample of his breath or blood. She explained that if he submitted to taking the test his license would be suspended for not less than 90 days. She further explained that if he did not submit to taking the test, his license could be "taken away" for 180 days. Enloe also explained that if appellant's license were suspended he could request a hearing to "get [his] license back." Enloe asked again whether appellant understood, and appellant called for his friend to translate the consent form.

---

[1] According to Enloe's testimony, the National Highway Traffic Safety Administration (NHTSA) considers two clues in either test to indicate possible intoxication.

Appellant's friend, who was at the scene, walked over to where appellant and Enloe were standing. Enloe explained to appellant's friend that she was asking appellant for a sample of his breath or blood to determine whether his blood alcohol concentration was "above or below the legal limit, which is .08." She further explained that if appellant agreed to take the test, and failed it, his license could be suspended for "up to 90 days." If he did not agree, she explained, "his license can be taken away from him for 180 days." She further stated, "Either way, if his license is taken away from him he can request a hearing to get his license back," but he must do so in writing within 15 days. Appellant's friend then spoke to appellant in appellant's native language.

After appellant's friend explained the warnings to appellant, Enloe asked if appellant had any questions. In response to an inaudible comment from appellant's friend, Enloe explained that she could not advise whether appellant should or should not take the test, but could only advise that the law says if the breath test is over the limit, his license can be taken for "up to 90 days," but he would receive a temporary license to go to and from work. Enloe reiterated to appellant's friend that if appellant refused a breath sample she could obtain a warrant to take his blood. Appellant's friend nodded and indicated that appellant understood. Enloe told the friend she needed a "yes or no from [appellant]." Appellant said yes, he would agree to a breath sample.

After appellant agreed to give a sample of his breath Enloe transported him to "Central Intox" in downtown Houston. Enloe testified that she is supposed to push a button in the patrol car, which indicates her arrival at Central Intox. She admitted she does not always remember to push the button when she arrives. The computer in her patrol car the morning of appellant's arrest reflects that she pushed the "arrive" button at Central Intox at 2:20 a.m. She could not remember if that

was the actual time of arrival, or if she pushed the button later. Upon arrival, Enloe transported appellant to a room with "an Intox certified person."

Barbara Bougere, the breath test operator, testified that Enloe transported appellant to the breath test room where she was located in Central Introx. Bougere observed appellant for 15 minutes prior to administering the breath test. She testified that the Intoxilyzer 5000 goes through a circuit check before each test. She did not commit any mistakes while conducting the test, and she tested the instrument and determined it was functioning properly. The breath test was administered twice, and results revealed a blood alcohol concentration of .143 and .141 grams per 210 liters. The breath test slip indicates the breath test was begun at 2:33 a.m.

Carly Davies, the technical supervisor for the Texas Department of Public Safety, Breath Alcohol Testing Program, testified that at .08 blood alcohol level, a person does not have the normal use of his or her mental faculties. Davies explained the scientific theory behind the use of the Intoxilyzer 5000, and that the technique was properly applied in this case. The Intoxilyzer 5000 used to test appellant's breath was certified, operating correctly, and capable of giving accurate results on the date of the offense.

Appellant presented the testimony of Phillip Tusa, the custodian of records for Mobile Data Terminals (MDTs) inside Houston Police Department patrol cars. He testified that the MDT reflected that at 2:21 on the morning of the offense, Enloe's patrol vehicle was driving at nine miles per hour in the parking lot of the building that houses Central Intox. He further testified that the clocks in the MDTs are not calibrated with the clocks inside the Central Intox building.

At the conclusion of Tusa's testimony, appellant renewed his objection to the admission of the breath test and requested a hearing. The trial court held a

hearing outside the presence of the jury at which appellant testified. Appellant testified that he did not understand the DIC-24 when Enloe read it to him, and his friend did not read it to him "word-for-word." Appellant testified his friend told him, "if I am not willing to take the test, my driving license would be confiscated. Since I'm a driver, that be a big deal for me[.]" Appellant said his friend did not explain that the officer could apply for a warrant to obtain a blood sample. Appellant further testified that his friend did not understand the distinction between failing the breath test and passing it. At the conclusion of appellant's testimony outside the presence of the jury, appellant moved to suppress the breath test on the grounds that he did not understand the statutory warning. The trial court denied appellant's motion.

The jury convicted appellant of DWI and the court assessed punishment at six months in the Harris County Jail. The trial court suspended appellant's jail sentence and placed him on community supervision for one year.

## DISCUSSION

## I. Fifteen-minute Observation Period

In his first issue, appellant contends the trial court erred in admitting the breath test evidence because the State failed to prove that a proper 15-minute observation period was satisfied before the breath test was administered. Specifically, appellant argues Bougere's testimony that she observed appellant for 15 minutes prior to administering the breath test was refuted by the evidence from Enloe's MDT and the clock in the breath test room. Appellant argues the MDT evidence and GPS evidence show that Enloe arrived at Central Intox at 2:20 a.m. The clock in the breath test room read 2:33 a.m. when Bougere began the test. Appellant argues this is conclusive proof that he was not observed for 15 minutes prior to taking the breath test.

6

To be admissible, a breath test analysis must be performed according to the rules of the Texas Department of Public Safety. Tex. Transp. Code § 724.016; *Atkinson v. State*, 923 S.W.2d 21, 23 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002). Rules adopted by the DPS include the requirement that a technician continuously observe the person tested for at least 15 minutes before administering the test. 37 Tex. Admin. Code § 19.4(c)(1) (2006) (Dep't of Pub. Safety, Approval of Techniques, Methods, and Programs). Evidence obtained in violation of the law must be excluded from jury consideration in criminal cases on request of the defendant. Tex. Code Crim. Proc. art. 38.23. The judge should withhold such evidence from the jury altogether when it is inadmissible purely as a matter of law. *Atkinson*, 923 S.W.2d at 23. When there are disputed issues of fact affecting the legality of its seizure, the question of exclusion may be tried to the jury. *Id.* When there is a fact issue raised with respect to the 15-minute observation period, a defendant is entitled to an instruction that the jury disregard the test if it believes or has a reasonable doubt as to whether the 15-minute observation requirement was complied with. *See Adams v. State*, 67 S.W.3d 450, 453 (Tex. App.—Fort Worth 2002 pet. ref'd).

The trial court in this case resolved appellant's objection to the breath test evidence by concluding the evidence at trial presented a fact issue. The court included in its charge an instruction that the jury was to disregard the test results if it determined they were obtained without complying with the requirement of 15 minutes of continuous presence under section 19.4(c)(1) of title 37 of the Administrative Code. The jury was instructed:

> Therefore, if you believe from the evidence that Miss Bougere did not remain in the presence of the defendant for at least fifteen minutes, and exercise reasonable care to ensure that the defendant did not place any substance in the defendant's mouth, or you have a reasonable doubt thereof, then you will disregard the results of the intoxilyzer test

7

and not consider it for any purpose.

Enloe testified that she did not always push the "arrive" button when she arrived at Central Intox. She sometimes did not push it until she left. Tusa testified that the clocks inside Central Intox are not synchronized with the clocks in the patrol car MDTs. In contending the test results were inadmissible, appellant treats the time interval evidenced by the MDT clock and GPS in Enloe's car and the breath test sample strip as absolute, and ignores the fact that two different clocks established that time interval. Appellant further ignores Bougere's testimony that she observed appellant for the full 15 minutes. This evidence raised a fact question as to whether appellant was observed for 15 minutes. The jury was properly instructed to consider the conflicting evidence in deciding whether to rely on the breath test evidence. Therefore, the trial court did not err by not excluding the evidence as a matter of law. We overrule appellant's first issue.

## II.  Gatekeeper Hearing

In his second issue appellant argues the trial court erred in denying his request for a gatekeeper hearing outside the presence of the jury to determine the admissibility of the breath test evidence. The record reflects that appellant requested a hearing outside the presence of the jury, which was denied. Although the court later held a hearing, it did not hold a hearing on the reliability of the breath test evidence. Any error in failing to hold a hearing, however, was harmless.

The court of criminal appeals has held that the failure to hold a gatekeeping hearing will be harmless if the evidence is in fact reliable. *Jackson v. State*, 17 S.W.3d 664, 672 (Tex. Crim. App. 2000). We turn, therefore, to the reliability of the breath test results in this case. Scientific testimony must be both reliable and relevant in helping the jury reach a conclusion in a case. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992) (establishing the *Kelly* test for the admission of

scientific evidence used in Texas: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question).

When evidence of alcohol concentration as shown by the results of analysis of breath taken at the request or order of a peace officer is offered in the trial of a DWI offense, (1) the underlying scientific theory has been determined by the legislature to be valid; (2) the technique applying the theory has been determined by the legislature to be valid when the specimen was taken and analyzed by individuals who are certified by, and were using methods approved by the rules of, DPS; and (3) the trial court must determine whether the technique was properly applied in accordance with DPS rules on the occasion in question. *Reynolds v. State*, 204 S.W.3d 386, 390–91 (Tex. Crim. App. 2006).

In the case of breath test analysis results, the trial court need only perform a gatekeeper function centered on the third element, and compliance with section 724.016 of the Transportation Code satisfies the third element. *Id.* at 390. Section 724.016 provides that a breath specimen must be taken and analyzed under DPS rules by an individual possessing a certificate issued by DPS certifying that the individual is qualified to perform the analysis. Tex. Transp. Code § 724.016. The DPS has set forth the requirements for breath alcohol testing procedures in the Texas Administrative Code. *See* 37 Tex. Admin. Code § 19.4. Section 19.4 provides:

> (c) All breath alcohol testing techniques, in order to be approved, shall meet, but not be limited to, the following:
>
> (1) a period during which an operator is required to remain in the presence of the subject. An operator shall remain in the presence of the subject at least 15 minutes before the test and should exercise reasonable care to ensure that the subject does not place any substances in the mouth. Direct observation is not necessary to ensure

the validity or accuracy of the test result;

(2) the breath alcohol testing instrument and reference sample device must be operated by either a certified operator or technical supervisor and only certified personnel will have access to the instrument;

(3) the use of a system blank analysis in conjunction with the testing of each subject;

(4) the analysis of a reference sample, the results of which must agree with the reference sample predicted value within plus or minus 0.01g/210 L, or such limits as set by the scientific director. This reference analysis shall be performed in conjunction with subject analyses;

(5) all analytical results shall be expressed in grams of alcohol per 210 liters of breath (g/210 L);

(6) maintenance of any specified records designated by the scientific director;

(7) supervision of certified operators and testing techniques by a technical supervisor meeting the qualifications set forth in § 19.6 of this title (relating to Technical Supervisor Certification);

(8) designation that the instrumentation will be used only:

    (A) for testing subjects that are suspected of violating any statute or codified rule that defines intoxication in terms of alcohol concentration; and

    (B) in compliance with § 19.5(b), (c), and (e) of this title (relating to Operator Certification).

Carly Davies, the State's expert witness on the Intoxilyzer 5000, testified that as technical supervisor she is charged with monthly inspection of all the instruments within her area, training and certification of operations, and is the custodian of records. Davies attended specialized training in the repair and maintenance of the Intoxilyzer 5000. She testified that Bougere was a certified operator on the date of the offense, and the instrument used to test appellant's breath was certified by the scientific director of DPS on the date of the offense. The instrument was inspected on December 7, 2011, eleven days before appellant's

arrest, and it was determined that the instrument was operating correctly and capable of giving accurate results. The test records indicated that the proper operational method and techniques were followed. A reference sample was used during appellant's test, and the records reflected that the reference was "within tolerance," which is plus or minus .01.

There is a presumption of admissibility when the procedures prescribed by DPS are followed. *Reynolds*, 204 S.W.3d at 390; *Stevenson v. State*, 895 S.W.2d 694, 696 (Tex. Crim. App. 1995) (Intoxilyzer test presumed admissible when statutory requirements for proper procedure are followed). Appellant does not argue how he rebutted this presumption, other than his argument that the 15-minute observation period was not observed, which was properly submitted to the jury.

Because Davies' testimony satisfied the third *Kelly* requirement, any error in failing to hold a gatekeeping hearing was harmless. We overrule appellant's second issue.

## III. Voluntary Consent to Breath Test

In his third issue, appellant argues the trial court erred in admitting the breath test evidence because the State failed to show his consent was voluntary. Specifically, appellant argues the DIC-24 was not translated "word-for-word" in his native language, Enloe gave him an extra-statutory warning, and misstated the law on the length of time his license could be suspended.

"A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement." *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). In making this determination, the trial court must consider the totality of the circumstances. *Id*. "[N]o one statement or action should automatically amount to

11

coercion such that consent is involuntary—it must be considered in the totality." *Id*. We will uphold a trial court's ruling on the voluntariness of a breath test unless the ruling is clearly erroneous. *Id*. at 335. The ultimate question is whether the person's "will has been overborne and his capacity for self-determination critically impaired" such that his consent to search must have been involuntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973).

Evidence obtained in violation of the law must be excluded from jury consideration in criminal cases on request of the defendant. Tex. Code Crim. Proc. art. 38.23. The judge should withhold such evidence from the jury altogether when it is inadmissible purely as a matter of law. *Atkinson*, 923 S.W.2d at 23. The validity of a consensual search is a question of fact, and the State bears the burden to prove by clear and convincing evidence that consent was obtained voluntarily. *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007). When there are disputed issues of fact affecting the legality of its seizure, the question of exclusion may be tried to the jury. *Id.* When, as here, there is a fact issue raised with respect to a defendant's consent to the breath test, a defendant is entitled to an instruction that the jury disregard the test if it believes or has a reasonable doubt as to whether he voluntarily consented to give a sample of his breath.

As with the 15-minute observation period, the trial court resolved appellant's claim that he did not voluntarily consent to the breath test by concluding the evidence at trial presented a fact issue.

In the charge to the jury, the trial court instructed the jury as follows:

In order for consent to be valid, it must be given voluntarily, knowingly and intelligently, and not as a result of duress, coercion, or deceit. Coercion can be direct or implied, overt or subtle. The voluntariness of a consent to give a breath specimen is to be determined from all the circumstances. You may consider factors such

12

as the accused's physical surrounding at the time the consent was given; whether the accused was in police custody; whether the accused knew that he could refuse to consent; whether any officer used lies, trickery, or deceit to obtain the consent; and, what choices were available to the accused.

Accordingly, you are instructed that before you may consider the intoxilyzer results in this case, the State must prove beyond a reasonable doubt that the defendant's consent was given voluntarily, knowingly and intelligently. If you find that the defendant's consent was not given voluntarily, knowingly or intelligently, or if you have a reasonable doubt thereof, you will not consider the intoxilyzer results for any purpose whatsoever.

Appellant first argues that the failure of the officers to translate the DIC-24 statutory warnings into Amharic, appellant's native language, renders his consent involuntary. The record reflects that Enloe read the DIC-24 form to appellant verbatim, and held the form at an angle where appellant could read along. After reading the form to appellant, Enloe asked appellant whether he understood his rights. Appellant indicated he wanted his friend to act as translator. Enloe did not read the entire DIC-24 form to appellant's friend, but explained it in detail to him. After an extended exchange about the consequences of refusal or failure of the breath test, appellant's friend indicated that appellant understood his rights and the consequences of consent. Other officers who investigated the scene also testified that appellant spoke and understood English.

Appellant also contends that Enloe gave an inaccurate extra-statutory warning, which rendered his consent involuntary. Enloe explained to appellant's friend, acting as translator, that if appellant agreed to take the test his license would be suspended for 90 days, but he would receive a temporary license to go to and from work. Appellant argues this statement is "crucial in the totality analysis because, not only is it an 'extra-statutory warning,' but it is an incorrect and misleading statement." Appellant argues that "there is nothing in the DIC-24 or

13

elsewhere that guarantees Appellant a license to go to and from work."

The record reflects that appellant was accurately advised twice of the appropriate length of suspension of his license for either a refusal to take the test, or failure to pass the test. Appellant was also advised accurately of his right to an administrative hearing to request an occupational license. Although appellant consented after hearing the inaccurate warnings, that fact alone, without evidence that appellant was pressured physically or psychologically, is insufficient to invalidate an otherwise voluntary consent. *See Fienen*, 390 S.W.3d at 333.

The evidence at trial raised a fact question as to whether appellant voluntarily consented to give a sample of his breath. The jury observed the video of the interaction between Enloe, appellant, and appellant's friend, and was properly instructed to consider the conflicting evidence in deciding whether to rely on the breath test evidence. Therefore, the trial court did not err by not excluding the evidence as a matter of law. *See Atkinson*, 923 S.W.2d at 23. We overrule appellant's third issue.

The judgment of the trial court is affirmed.


/s/     Marc W. Brown
        Justice


Panel consists of Justices Boyce, Christopher, and Brown.
Do Not Publish — TEX. R. APP. P. 47.2(b).

14