

# NUMBER 13-16-00621-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                      **Appellant,**

**v.**

JULIO VASQUEZ,                                           **Appellee.**

## On appeal from the 139th District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Justice Benavides**

In a single issue, appellant the State of Texas appeals the trial court's grant of appellee Julio Vasquez's motion to suppress the breath test arising out of his warrantless arrest for driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (West, Westlaw through 2017 1st C.S.). We reverse and remand.

## I. BACKGROUND

Vasquez was arrested for driving while intoxicated (DWI) after another driver reported that Vasquez's passenger[1] threw a beer bottle out his car window. The beer bottle broke a window of the other driver's vehicle and struck his passenger in the back of the head.

Defense counsel filed multiple motions to suppress: a global Motion to Suppress Evidence that alleged violations of the Fourth and Fourteenth Amendments of the United States, and articles 38.23 and Chapter 14 of the Texas Code of Criminal Procedure; a second Motion to Suppress; and a Motion to Suppress Breath Test Results that was heard on June 16, 2016.

Officer Adan Lopez, a patrol officer for the City of Edinburg, testified at the suppression hearing. Officer Lopez was dispatched to a report of a mobile disturbance at an intersection. The two vehicles were still moving, and he attempted to catch up to them. When the vehicles finally stopped they were in McAllen outside the city limits of Edinburg. The reporting vehicle was present near the house where the other vehicle was parked. The reporting vehicle had a broken window.

Officer Lopez contacted Vasquez at the house where he stopped. According to Officer Lopez, Vasquez's eyes were bloodshot, his speech was "blurred," his balance was unsteady, and his breath smelled of alcohol. Vasquez was uncooperative, refused to provide his information, and he appeared to be intoxicated. Vasquez insisted he had been at home for the previous two hours.

---

[1] The passenger was identified as Julio Vasquez's brother, Victor Alfonso Vasquez.

Officer Lopez detained both brothers initially to determine the facts. Once Officer Lopez obtained enough information to determine that the bottle throwing event took place in the City of Pharr, Officer Lopez contacted the Pharr Police Department to take over because the events happened in its jurisdiction. Heriberto Ortega, a Pharr police officer, arrived.

Officer Ortega testified that he was dispatched at 12:45 a.m. on February 16, 2015, in response to a report of an aggravated assault. Officer Ortega described seeing two vehicles traveling northbound on Jackson Street at a high rate of speed. He thought they might be racing. According to Officer Ortega, he spoke to the complainants at the Vasquez's house, a male driver and female passenger. The female passenger identified Julio Vasquez as the driver and his brother as the passenger who threw the beer bottle. The complainants told Officer Ortega that they followed the Vasquez brothers until they stopped and then they waited to speak with the police.

Officer Ortega testified that he also spoke to Vasquez and observed that Julio Vasquez had red bloodshot eyes, slurred speech and "emitted alcohol from his breath." Vasquez admitted he was driving the vehicle earlier that morning. Ortega administered a standard field sobriety test, the horizontal gaze nystagmus (HGN) test, to Vasquez, who failed the test. Vasquez refused further field sobriety testing. When Vasquez refused further field sobriety testing, Officer Ortega arrested him. On cross-examination, Officer Ortega admitted that he was not totally certain that Vasquez was intoxicated to the point he had lost the normal use of his mental and physical faculties, even after Vasquez failed the HGN.

3

After Vasquez was taken to the City of Pharr police station, a different officer administered an intoxilyzer test which furnished two results, .158 and .144. The intoxilyzer was administered at 3:22 a.m. and 3:24 a.m. that morning, over two hours after Vasquez was observed driving a vehicle.

Defense counsel argued that Officer Ortega did not have probable cause to arrest Vasquez for DWI and that the intoxilyzer test results should be excluded from trial based upon the time that elapsed between Vasquez's driving and the testing. The trial court granted the motion to suppress and later issued Findings of Facts and Conclusions of Law.[2] The State appealed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through 2017 1st C.S.).

## II. MOTION TO SUPPRESS

The State's sole issue on appeal is that the trial court erred in granting Vasquez's motion to suppress. The State's argument challenges the trial court's grant of the motion to suppress on two grounds: 1) that the trial court failed to consider the totality of the circumstances for probable cause and 2) the State objects to the trial court's alternate grounds for suppression.

### A. Probable Cause

#### 1. Standard of Review

A trial court's ruling on a motion to suppress is reviewed under a mixed standard. A trial court's determination of historical facts is entitled to "almost total deference," especially when those fact findings are based on an evaluation of credibility and demeanor. *Montanez v. State,* 195 S.W.3d 101, 106 (Tex. Crim. App. 2006); *see also*

---

[2] The appeal was abated pending receipt of the trial court's Findings of Fact and Conclusions of Law. The appeal was reinstated after the supplemental clerk's record was received.

*Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). The trial court's application of the law is reviewed *de novo. Torres*, 182 S.W.3d at 902.

### 2. Applicable Law

Probable cause for a warrantless arrest requires that the officer have a reasonable belief that based on the facts and circumstances within the officer's personal knowledge, or of which the officer has "reasonably trustworthy information," an offense has been committed. *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). "[T]he detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (internal quotations omitted); *see Woodward v.* State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982). A detaining officer may rely on a known citizen informant. *Derichsweiler*, 348 S.W.3d at 914–15.

The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "A finding of probable cause requires 'more than bare suspicion' but 'less than . . . would justify . . . conviction.'" *Amador*, 275 S.W.3d at 877 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949).

### 3. Discussion

The trial court reached the following conclusions of law related to probable cause:

1. It is established in the case law that an officer must have probable cause to arrest a defendant without a warrant. *See Anderson v. State*, 932 S.W.2d 502, 506 (Tex. Crim. App. 1996) (citing *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990)). Probable cause for an arrest exists where, at that moment facts and circumstances within the knowledge of the arresting officer, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person in believing that a particular person has committed or is committing a crime. *See Smith v. State*, 739 S.W.2d 848, 851 (Tex. Crim. App. 1987).

2. Intoxicated means:  (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more.  *State v. Villarreal*, 476 S.W.3d 45, 56 (Tex. App.[sic]), aff'd, 475 S.W.3d 784 (Tex. Crim. App. 2014); Tex. Penal Code Ann. § 49.01(2).

3. In assessing demeanor and credibility, Officer Ortega (the arresting officer), was equivocal at best on the issue of being intoxicated as defined by law. Probable cause was not shown and thus, the arrest was unlawful. The breath test was the fruit of the unlawful arrest in violation of the Fourth and Fourteenth Amendments to the United States Constitution, Article 1 section 9 of the Texas Constitution, and Texas Code of Criminal Procedure Article 38.23.

The trial court's findings and conclusions indicate that the trial court placed considerable weight on Officer Ortega's uncertainty as to the ultimate conclusion that Vasquez had lost the normal use of his physical and mental faculties.

The facts and circumstances known to Officer Ortega included:  Vasquez was the driver (both by his admission and the identification by the other vehicle's passenger); Vasquez travelled through three jurisdictions at a high rate of speed; Vasquez's statement that he had been home for two hours was contradicted by the observations of the witnesses; Vasquez failed the field sobriety test for HGN; he refused further field sobriety

6

testing; and Officers Ortega and Lopez both observed that Vasquez's eyes were red and bloodshot, Vasquez's balance was unsteady, his speech was slurred, and he smelled of alcohol.[3]

The trial court's conclusion that there was no probable cause appears to rest solely on Officer Ortega's uncertainty, rather than consideration of the totality of the facts and circumstances as required. *See e.g. Woodward*, 341 S.W.3d at 414;[4] *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (noting that slurred speech and bloodshot eyes, among other things, "would logically raise an inference that the defendant was intoxicated"); *Amador*, 275 S.W.3d at 879 (detailing evidence of intoxication including unsteadiness, smell of alcohol, poor performance on field sobriety tests).[5]

---

[3] The trial court's Findings of Fact and Conclusions of Law include these facts in the Background section. The only finding of fact related to probable cause is as follows:

> Viewing Officer Ortega's demeanor and assessing his credibility, he did not have probable cause to arrest Julio Vasquez for driving while intoxicated. This is especially true in light of his testimony that he decided to arrest Julio Vasquez even though he was "not sure"/equivocal as to whether Vasquez was intoxicated to the extent that he had lost his mental or physical capacities. Viewing his demeanor and assessing his credibility, Ortega did not have probable cause that Vasquez was intoxicated to the extent of (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more.

[4] Defendant voluntarily confirmed his involvement in the accident and then confessed to driving while intoxicated when he stated that he was drunk and should not have been driving. Officer Warner noticed that Woodard smelled of alcohol, staggered when he walked, and had blood shot, glazed eyes. Arguably, the totality of this information, obtained first-hand and through a trustworthy source, provided Officer Warner with probable cause to arrest Woodard for DWI. . . . Woodard's performance on the tests, as well as the information obtained during the preceding interaction, undoubtedly provided Officer Warner with probable cause to believe that Woodard had driven the now-wrecked car while intoxicated.

*Woodward v. State*, 341 S.W.3d 404, 414 (Tex. Crim. App. 2011).

[5] *See also Cotton v. State*, 686 S.W.2d 140, 142–43 & n. 3 (Tex. Crim. App. 1985) (listing signs of intoxication); *Markert v. State*, No. 13-10-00061-CR, 2011 WL 2937428 at *3 (Tex. App.—Corpus Christi July 21, 2011) (mem. op., not designated for publication) (holding deputy had probable cause for arrest where defendant had strong odor of alcohol on his breath, his eyes were glassy and bloodshot, speech was slurred, he could not maintain his balance, an open alcoholic beverage was found in the car, and he refused to perform field sobriety tests); *State v. Garrett*, 22 S.W.3d 650, 654 (Tex. App.–Austin 2000, no pet.) (finding

In *State v. Downs*, this Court held that under similar circumstances to those before the trial court, the trial court was "incorrect to the extent it determined that Officer Cantu's uncertainty [at the motion to suppress] precluded a showing of probable cause to arrest." No. 13-13-00358-CR, 2013 WL 5654990 at *4 (Tex. App.—Corpus Christi Sept. 17, 2015) (mem. op., not designated for publication).

After reviewing the trial court's conclusions of law *de novo*, we conclude that the trial court applied the wrong legal standard to the facts.

## B.  Alternate Grounds for Suppression of Breath Test

The State objects to the trial court's alternate grounds for suppressing the breath test:  1) test was taken approximately over two hours after Vasquez was seen operating his vehicle, and 2) the State failed to lay the proper predicate.  The State argues that the trial court's suppression on these grounds was not supported by the record and that the State was not given fair notice that these grounds would be heard.

### 1. The Trial Court's Findings and Conclusions

The trial court made the following findings of fact on this issue:

Pharr police officer Heriberto Ortega was not the intoxilyzer 5,000 operator and he did not see Vasquez blow into the intoxilyzer 5,000.  He could not say what Vasquez's blood alcohol concentration was at the time it was said he was driving.

A breath test was not administered until approximately 3 hours after Vasquez was said to be driving a motor vehicle.

The trial court made the following Conclusions of Law related to this issue:

The predicate for breath analysis testimony established by *Harrell v. State* is typically met by testimony of two witnesses. 725 S.W.2d 208 (Tex. Crim. App. 1986). As the Court of Criminal Appeals has made clear, the Department of Public Safety's certification framework distinguishes between

---

probable cause to arrest the defendant for DWI when he smelled of alcohol, had watery eyes, was unsteady on his feet, and drove illegally).

8

persons certified to administer breath tests — operators of breath testing devices — and those certified to function in a supervisory capacity — technical supervisors. *See French v. State*, 484 S.W.2d 716, 719 (Tex. Crim. App. 1972) ("an officer may administer a breath test even though he is not otherwise qualified to interpret the results, and the standards required to qualify one to administer the test are far less than those qualifying to interpret the test results"); 37 Tex. ADC § 19:4 (operator certification); 37 Tex. ADC § 19:5 (technical supervisor certification). Certification in the latter capacity requires "knowledge and understanding of the scientific theory and principles as to the operation of the instrument and reference sample device." 37 Tex. ADC § 19:5(a)(4). Thus, a person certified as a technical supervisor is generally required to meet the second and third requirements of the *Harrell* predicate. First, the officer who administers the test testifies that he is certified as an intoxilyzer operator, that he administered the test to the defendant and did so in accordance with the Department's regulations, and that the results are contained in a data readout that the State offers as an exhibit. As part of this testimony, the operator testifies that he ran a reference test on the intoxilyzer and what results were produced by this reference test. Second, an officer who was the technical supervisor with supervisory responsibility for the machine used in the test testifies that he is certified by the Department as a technical supervisor, the machine used was certified by the Department for testing purposes, the machine used was checked periodically to assure that it operated properly, and that the reference sample used by the officer administering the test was properly prepared. This witness generally asserts that he understands the scientific theory of the device and interprets the numbers on the data readout. He may also explain the reference test and what is meant by the results of this process. [In a footnote, the Conclusions of Law noted,] Julio Vasquez filed a Motion to Suppress attacking the breath test results on the basis of their reliability, accuracy, that they should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, *Kelly v. State/Kelly* predicate, Rule 702 of the Texas Rules of Evidence, and the Texas Transportation Code.)

The State did not meet the necessary requirements. Instead, the testimony showed that police officer Heriberto Ortega was not the intoxilyzer 5,000 operator; that he did not see Vasquez blow into the intoxilyzer 5,000; that some "anybody" conducted the test; that Ortega could not say what Vasquez's blood alcohol concentration was at the time he was said to be driving; and that approximately three hours passed from the time it was said that Vasquez was driving and the time the breath test was conducted. Thus, this was another ground to suppress/exclude the breath test results.

## 2. Discussion

Vasquez's Motion to Suppress Breath Test Results argued that Vasquez's arrest was made without a warrant, reasonable suspicion or probable cause, and sought to suppress "[a]ll statements made, either oral or written, and any acts performed after said seizure of Defendant . . . ." The motion also argued that the breath test was performed "2 1/2 hours after the defendant was stopped" and there is no way to ascertain what his breath alcohol was at the time he was operating the vehicle. Finally, the motion argues that the breath specimen was not preserved. These are the sole grounds raised in the motion. The motion does not challenge the propriety of the State's administration of the test.

Months earlier, Vasquez filed two previous motions to suppress. The second motion argued thirty-three issues, including challenges based upon: relevance of the intoxilyzer results, unfair prejudice resulting from the delayed test, defective design of the intoxilyzer, failure to pre-test the intoxilyzer for accuracy,[6] and a challenge to the intoxilyzer's reliability pursuant to Rule 702 and *Kelly v State*.[7] Although Vasquez argues

---

[6] To introduce intoxilyzer results into evidence, the State must establish: (1) that the machine functioned properly on the day of the test as evidenced by a reference sample having been run through it; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory behind it; and (3) proof of the results of the test by a witness or witnesses qualified to translate and interpret such results.

*Harrell v. State*, 725 S.W.2d 208, 209 (Tex. Crim. App. 1986)*; see Rhyne v. State*, 387 S.W.3d 896, 902 (Tex. App.—Fort Worth 2012, no pet.).

[7] This issue has already been resolved in favor of admission. "[T]he Legislature has already determined that the underlying science [regarding the Intoxilyzer 5000] is valid and the technique applying it is valid as long as it is administered by individuals certified by and using methods approved by the rules of the Texas Department of Public Safety." *Reynolds v. State*, 204 S.W.3d 386, 390 (Tex. Crim. App. 2006) (citing TEX. TRANSP. CODE ANN. § 724.064 (West 2011) (providing that evidence of alcohol concentration, as shown by analysis of a specimen of the person's breath taken at the request of a peace officer, is admissible at trial in a driving while intoxicated case)). When the results of a breath test are challenged, "all the trial court need do to satisfy its 'gate-keeping' function is to determine whether the technique was properly applied in accordance with the rules of DPS on the particular occasion in question." *Reynolds*, 204 S.W.3d at 390.

that his earlier motion was set for hearing, the hearing notice (which was prepared by defense counsel and attached to his motion to suppress the breath test) states only that the Motion to Suppress Breath Test was set for hearing.

At the end of the motion to suppress hearing, defense counsel tendered to the trial court a copy of *McCafferty v. State*, a 1988 case in which the reviewing court held the evidence of DWI was insufficient in part because the breath test administered to a driver was performed more than two hours after the call to police. 748 S.W.2d 489, 492 (Tex. App.—Houston [1st Dist.] 1988, no writ). Defense counsel argued that the delay in *McCaffrey* supported suppression in this case. The *McCafferty* case did not address suppression but instead held that the evidence of DWI was insufficient under a no longer used standard in circumstantial evidence cases.[8] More recent authority is to the contrary.

"The results of a test for alcohol concentration taken within a reasonable period of time after the defendant was driving and showing that he was above the legal limit are probative evidence of intoxication at the time of driving." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004) (reversing the court of appeals holding that test result eighty minutes after driving was inadmissible without retrograde analysis). In *State v. Mechler*, the court held that the trial court abused its discretion when it suppressed breath analysis pursuant to Rule 403, even though the breath test was taken more than ninety minutes after the driver was out of the car. 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *see also Giglioblanco v. State*, 210 S.W.3d 637, 642–43 (Tex. Crim. App. 2006) (holding the trial court did not abuse its discretion in admitting a breath test taken eighty minutes after defendant was stopped for traffic violation); *State v. Esparza,* 353 S.W.3d 276, 283 (Tex.

---

[8] *See Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

App.—El Paso 2011, no. pet.) (noting "breath test results are generally admissible at trial even if the breath test was administered several hours after the alleged offense . . . because breath test results show that the defendant drank alcohol in the day in question"); *Zavala v. State*, 89 S.W.3d 134, 139 (Tex. App.—Corpus Christi 2002, no writ) (distinguishing *McCafferty* and holding evidence sufficient to support conviction for DWI).[9]

Before the State is put to its proof that the intoxilyzer test was administered in accord with the required protocol, the defendant must make his objection known. In this case, although Vasquez had filed a motion raising thirty-three different issues, that motion was not set for hearing. Accordingly, the State could not have known that it needed to prove up the reliability of the intoxilyzer procedures the day of the hearing.

We conclude that the trial court abused its discretion in suppressing the breath test based upon the delay between Vasquez's driving and the intoxilyzer test. We hold that the State was not notified of its obligation to provide the required basis for admission of the intoxilyzer testing. Accordingly, the trial court abused its discretion by excluding the

---

[9] While the time of [defendant's] driving was not specifically fixed in the record, it was sometime between 11:00 or 11:30 p.m., when appellant testified he drank an alcoholic beverage, and 3:40 a.m., at which time the police were dispatched to the accident site. Appellant was asked by Officer Gibbs after the accident whether he had had any alcoholic beverages and indicated none aside from the one he claimed he drank between 11:00 and 11:30 p.m. Thus, any intoxication under which appellant was laboring at the time of the arrest and at the intoxication center, by his own admission, must have had its origin in the drink, or drinks, which he had no later than 11:30 p.m. Hence, there is no possibility that appellant could have gotten intoxicated after the accident. Therefore, since appellant's intoxicated state at the time of his arrest could only have arisen from his drinking at around 11:00 to 11:30 p.m. the night before, it follows that appellant must have been intoxicated between those time periods, which would have included the time of the accident. Thus the evidence is sufficient to establish that, whatever time the accident occurred, it occurred at a time during which he was intoxicated [approximately four hours before HGN and other field sobriety tests administered].

*Zavala v. State*, 89 S.W.3d 134, 139 (Tex. App.—Corpus Christi 2002, no writ).

testing on that basis.  We express no opinion as to the merits of such a challenge based upon a proper record.

Based upon the above discussion, we sustain the State's sole issue.

### III. CONCLUSION

We reverse the order of the trial court suppressing the breath test evidence and remand for proceedings consistent with this opinion.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
26th day of July, 2018.